## STATE OF CONNECTICUT *v.* TOBIAS ANDERSON
## (13302)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued March 29—decision released July 4, 1989

*Martin Zeldis,* assistant public defender, for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Dennis O'Connor,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in a substitute information with two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B),[1] one count of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a),[2] two counts of sex-

---

[1] "[General Statutes] Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when: (1) His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function.

"(b) Kidnapping in the first degree is punishable as a class A felony."

[2] General Statutes § 53a-49 (a) (2) provides: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty

ual assault in the first degree in violation of General Statutes § 53a-70 (a), and one count of attempted robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (3).[3] He was tried by a jury and convicted of one count of kidnapping in the first degree, one count of attempted robbery in the first degree and one count of attempted sexual assault in the first degree. The trial court sentenced the defendant to concurrent terms of fifteen years imprisonment on the kidnapping conviction and five years imprisonment on the attempted robbery conviction. The court also sentenced the defendant to a term of ten years imprisonment on the attempted sexual assault conviction to run consecutively with the kidnapping sentence for a total effective sentence of twenty-five years.

The defendant has appealed his convictions claiming that: (1) his prosecution by the state on two counts of kidnapping in the first degree, and his prosecution on

of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

"[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

[3] General Statutes § 53a-134 (a) (3) provides: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument."

attempted sexual assault in the first degree and sexual assault in the first degree violated his right under the fifth amendment to the United States constitution not to be twice placed in jeopardy for the same offense; (2) the trial court's instructions on the kidnapping charges both confused and misled the jury; (3) the trial court erred in giving a *Secondino* charge in its instructions to the jury; (4) there was insufficient evidence to convict him of attempted robbery in the first degree; and (5) he was denied his constitutional right to be sentenced fairly and impartially. We find no error.

The defendant first claims a dual violation of his constitutional right against double jeopardy by his prosecution on two counts of kidnapping in the first degree, and his prosecution for attempted sexual assault in the first degree and sexual assault in the first degree. Specifically, the defendant maintains that he was improperly prosecuted on two counts of kidnapping as the facts alleged indicate that there was only one continuing offense. Furthermore, the defendant claims that he was prosecuted for attempted sexual assault and sexual assault, which counts should have been merged into one count of sexual assault. The defendant argues that, because he was prosecuted on multiple counts of the above-mentioned crimes, his right against double jeopardy has been violated. The defendant concedes that this issue was not raised at trial, but maintains that we should, nevertheless, review it under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We conclude, however, that the double jeopardy clause is not implicated and that review under *State* v. *Evans,* supra, is, therefore, not warranted.

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice

put in jeopardy of life or limb. . . . ''[4] "The prohibition of double jeopardy prevents not only multiple trials, but also multiple *punishments* for the same offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)." (Emphasis added.) *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); *State* v. *John,* 210 Conn. 652, 693, 557 A.2d 93 (1989); P. Robinson, Criminal Law Defenses (1984) § 68 (a). In the context of a single trial, "the threshold issue [in determining whether the double jeopardy clause is implicated is] whether multiple punishments have been imposed." *State* v. *John,* supra, 694. "The prosecution and submission to a jury of multiple charges arising from the same offense is not itself unconstitutional. See *Ohio* v. *Johnson,* 467 U.S. 493, 500, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984)." *State* v. *Devino,* supra, 73–74 n.4.

In the instant case, multiple punishments for the various counts brought by the state were not imposed against the defendant. The defendant was convicted and sentenced on only one of the two counts of kidnapping in the first degree. Moreover, he was found guilty of attempted sexual assault but acquitted on the sexual assault counts. Because multiple punishments were not imposed, the defendant's double jeopardy rights have not been offended and, therefore, we decline to review the defendant's claims under *State* v. *Evans,* supra.

The defendant next claims that he is entitled to a new trial because the trial court's instructions to the jury on the essential elements of kidnapping in the first degree violated his due process rights under the four-

[4] Constitutional guarantees against double jeopardy were made applicable to the states through the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

teenth amendment to the United States constitution and article first, § 8 of the Connecticut constitution. The defendant maintains that the court's instructions were inadequate because the jury was not properly instructed on the "intent . . . to accomplish or advance the commission of a felony" element of kidnapping in the first degree required under § 53a-92 (a) (2) (B). We disagree.

Initially, we note that the defendant did not except to any part of the court's instruction on this charge at trial, but raises this issue for the first time on appeal. A claim not raised at trial is reviewable only if the record adequately supports a claim that the defendant has clearly been deprived of a fundamental constitutional right and a fair trial. *State* v. *Evans,* supra, 70. We will review the defendant's claim in the instant case because "the failure to instruct the jury adequately on each essential element of the crime charged may have resulted in a violation of the defendant's due process rights implicating the fairness of his trial. *State* v. *Fleming,* [198 Conn. 255, 269–70, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986)]; *State* v. *Sinclair,* 197 Conn. 574, 580, 500 A.2d 539 (1985)." *State* v. *Foster,* 202 Conn. 520, 537, 522 A.2d 277 (1987).

" 'It is axiomatic that the state is required to prove all the essential elements of the crimes charged beyond a reasonable doubt in order to obtain a conviction. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).' " Id., 537–38. "It cannot be considered harmless error for a jury 'to find an accused guilty without even knowing what are the essential elements of the crimes charged.' *State* v. *Griffin,* [175 Conn. 155, 162–63, 397 A.2d 89 (1978)]; see *United States* v. *Howard,* 506 F.2d 1131, 1134 (2d Cir. 1974); *State* v. *Kurvin,* 186 Conn. 555, 573, 442 A.2d 1327 (1982) (*Speziale, C. J.,* dissenting). Put another way,

the failure to instruct a jury on an essential element of a crime charged is error because it deprives the defendant of the right 'to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are.' *United States* v. *Natale,* 526 F.2d 1160, 1167 (2d Cir. 1975), cert. denied, 425 U.S. 950, 96 S. Ct. 1724, 48 L. Ed. 2d 193 (1976), citing *United States* v. *Fields,* 466 F.2d 119, 121 (2d Cir. 1972). Of course, any such error is not cured just because an appellate court is satisfied after the fact of conviction that sufficient evidence was before the jury so that it would or could have found that the state proved the missing element had the jury been properly instructed. After all, 'when [the defendant] exercised his constitutional right to a jury, he put the [state] to the burden of proving the elements of the crimes charged to a jury's satisfaction, not to ours or [the trial judge's].' *United States* v. *Howard,* supra, 1134." *State* v. *Gabriel,* 192 Conn. 405, 414, 473 A.2d 300 (1984).

" 'It is well established, however, that the individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812 [cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84] (1985); *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984); *State* v. *Hines,* 187 Conn. 199, 209, 445 A.2d 314 (1982). The whole charge must be considered from the standpoint of its effect on the jury in guiding them to the proper verdict; *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980); *State* v. *Piskorski,* 177 Conn. 677, 746–47, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); and not critically dissected in a microscopic search for possible error. *State* v. *Harris,* 172 Conn. 223, 226–27, 374 A.2d 203 (1977).' *State* v. *Reddick,* 197 Conn. 115, 131–32, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S.

Ct. 822, 88 L. Ed. 2d 795 (1986)." *State* v. *Foster*, supra, 538. "Thus, an error in the charges requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict. *State* v. *Fleming*, supra, 269; *State* v. *Sinclair*, supra, 581; *State* v. *Kurvin*, [supra, 558]." Id.

In the instant case, the defendant was charged with two counts of kidnapping in the first degree under § 53a-92 (a) (2) (B), which states in pertinent part that "[a] person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains that person abducted with the intent to . . . (B) accomplish or advance a felony." According to the defendant, the trial court did not adequately explain to the jury that he was charged with two counts of kidnapping and that for the jury to find him guilty of either of the two counts, or both, it was necessary for it also to find that the state had proved that he intended to accomplish or advance each of the charged underlying felonies. Before we address the merits of this argument, we note the following facts.

In the first count of kidnapping, the state alleged that the defendant had approached the victim on Prospect Street in Bloomfield, held her at knifepoint, and forcibly directed her to a nearby schoolyard. Once in the schoolyard, the defendant attempted to have sexual intercourse with the victim, thereby making attempted sexual assault the underlying felony alleged in the first kidnapping count. In the second count of kidnapping, that state alleged that the defendant, still holding his knife, had taken the victim from the schoolyard to his home. In his bedroom, he allegedly had sexual intercourse with the victim, thereby making sexual assault the underlying felony alleged in the second kidnapping count.

In its instructions to the jury pertaining to the two kidnapping charges, the trial court read § 53a-92 (a) (2) (B) to the jury and then stated that "the State must prove the following elements beyond a reasonable doubt in this particular charge [of kidnapping]. . . . And I will define what abduction means. That the defendant unlawfully restrained the person he abducted. And I'll define what restrained means. And he did so—[that is] he restrained that person with the intent of accomplishing or advancing the commission of a felony, in this case the sexual assault." Following a lengthy definition of the terms abduct and restrain, the court stated "[a]nd if you find that he intended to commit a sexual assault upon the [victim]—it's only that he intended to commit the sexual assault—that . . . would be sufficient. Sexual assault as charged in this particular case, sexual assault in the first degree, is a felony. If you found him guilty of that that . . . would be sufficient to establish the kidnapping in this particular case."[5] The court went on to state that "[h]e either has to sexually assault her or do it with the—in an attempt or in an—so that he's furthering his objective, really, to accomplish the commission of the felony. And that's—it's a step in furthering or advancing his position to commit the felony that he intends." After defining "intent," the court stated that "there are two counts of kidnapping in the first degree. And this instruction will apply to both counts. Now, the two counts of kidnapping in the first degree, as I understand then, would be the

[5] The defendant points to the statements directly preceding this statement on the underlying felony involved, where the court started to instruct the jury as to physical injury, incorrectly assuming that the charge was kidnapping done for the purpose of inflicting physical injury under General Statutes § 53a-92 (a) (2) (A). The court quickly realized its mistake and told the jury to "forget" what it said "about physical injury. Because the charge is that she was kidnapped with the intention of committing a felony." We do not believe that the court's initial error unduly misled or confused the jury.

first time that the defendant and the victim met. Now, if you believe the victim she was then moved, under the threat of a knife, from Prospect Street to Vincent School. And at the Vincent School some time subsequent to their arrival there it was the victim's allegation that an attempt at sexual assault occurred . . . [t]hat's the first kidnapping. That when the sexual assault was attempted that completed that particular kidnapping. The second kidnapping now would be the movement from the Vincent School to the defendant's bedroom, as stated by the victim. So those are the two counts of kidnapping in the first degree. And if you find that one occurred and one didn't, you will find him guilty on one count and not guilty on the other count. If you find that they both occurred, you'd find that he was guilty on both counts. If you find that neither one occurred, you'd find him not guilty on both counts. But that takes care of the two kidnapping counts." In addition to the charge on kidnapping, the court gave a detailed definition of the elements of sexual assault and attempted sexual assault.

Viewing the instructions as a whole, we conclude that the jury was able to understand that two kidnapping charges were involved, that it was necessary for them to find each of the elements of kidnapping stated by the court as to both charges, and that attempted sexual assault was the underlying felony in the first count of kidnapping and sexual assault was the underlying felony in the second count of kidnapping. Because the court instructed the jury as to what must be proved to sustain a conviction, including the "intent . . . to accomplish or advance a felony" element necessary under § 53a-92 (a) (2) (B), the defendant was not denied his due process rights. "[T]he fact that the [elements were] neither labelled nor numbered does not render the recitation misleading." *State* v. *Kurvin,* supra, 565. The jury, in fact, acquitted the defendant of the sec-

ond kidnapping count that alleged a completed sexual assault as the underlying felony. The court's instructions on that count were, if anything, less clear than on the first count of kidnapping. The jury, however, apparently had no difficulty in understanding and applying those instructions. We find no error in the trial court's jury instructions on the kidnapping counts.

As his third contention, the defendant claims that the trial court committed reversible error when it gave the jury a missing witness instruction, otherwise known as a *"Secondino* charge." In *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960), we restated the rule that " '[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' [*Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 A. 461 (1928)]." Id., 675. "There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce." Id.; *State* v. *Shashaty,* 205 Conn. 39, 43, 529 A.2d 1308 (1987), cert. denied, 484 U.S. 1027, 108 S. Ct. 753, 98 L. Ed 766 (1988). "When 'counsel for either the state or the defendant intends to argue to the jury that an unfavorable inference be drawn from the absence of a witness at trial, an advance ruling from the court should be sought and obtained.' " *State* v. *Gonzalez,* 197 Conn. 677, 680, 500 A.2d 1330 (1985); *State* v. *Daniels,* 180 Conn. 101, 113, 429 A.2d 813 (1980). In order for such a rule to have any efficacy, objections by a party opposing such an instruction should be made at the time the advance ruling is sought. A party who fails to make a timely objection to the giving of a *Secondino* charge will be deemed to have waived the issue for appeal. The giving of a *Secondino* charge is purely

an evidentiary issue and is not a matter of constitutional dimensions. See *State* v. *Shashaty*, supra, 44; *State* v. *Annunziato*, 169 Conn. 517, 538, 363 A.2d 1011 (1975); see also *State* v. *Brown*, 187 Conn. 602, 612, 447 A.2d 734 (1982) (other than a failure to instruct on an element of a crime, appellate court will not review error claimed in jury instructions where no objection made and no plain error involved). Appellate review under *State* v. *Evans*, supra, is, therefore, not available.

In the present case, the defendant testified at trial that he knew the victim prior to the incident in question. The defendant stated that he did not know the victim's name at the time, but that he recalled having seen her at two large parties. He further testified that he went to at least one of these parties with D and J. Although the defendant testified that he knew the address of D and J and that they were available to come to court, neither D nor J testified at trial. In its request to charge, the state asked that the court give a *Secondino* charge. A copy of the state's request was given to the defendant and, prior to closing arguments, the state asked the court for a ruling on the requested *Secondino* charge because it intended to argue that issue in its summation. The court stated that it had "no problem" with giving a *Secondino* charge. At this point, the defendant did not object. Thereafter, in his closing argument to the jury, the defendant argued that an inference could be drawn that the victim had consented to sexual relations with him because he knew her prior to the incident in question.[6] Following these

---

[6] In arguing to the jury that the victim consented to sexual intercourse with the defendant, his attorney stated:

"Mr. Hunt: Toby indicate[d] to you that he had seen this person by way of parties, not being with her but he had met her. He had seen her. He also indicated that he had not only seen her sister, he talked to her. She was a member of his class at Bloomfield High School. . . . "

remarks, the state made a rebuttal argument to the jury in which it pointed out that the defendant's failure to produce either D or J undermined his claim that he had known the victim prior to the night in question. The defendant objected to the state's comment, claiming that it had no knowledge of whether D or J were "available." The court overruled the defendant's objection, stating that it had already ruled in favor of giving a *Secondino* charge. The defendant took an exception to the court's ruling. The court thereafter gave a *Secondino* charge in its instruction to the jury. The defendant took an exception to the court's charge, again arguing that the state had no knowledge of whether D and J were available to testify.

As the state correctly argues, the defendant's claim was not properly preserved for appeal because he did not make a timely objection to the *Secondino* charge at trial. Although the defendant objected to the court's instructions during the state's final argument and after the *Secondino* charge was given to the jury, objection to such an instruction should have been made by the defendant when he learned that the state had requested it and prior to its being brought up in arguments. See *Keating* v. *Glass Container Corporation,* 197 Conn. 428, 433, 497 A.2d 763 (1985); see also 1 J. Wigmore, Evidence (3d Ed.) § 18 (objections "must be made as soon as the applicability of it is known"). The state followed the proper procedure in requesting a *Secondino* charge and it was incumbent on the defendant to interpose a proper objection before the issue of the missing witnesses was brought to the attention of the jury. Further, even if we were to reach the merits on this question, we are not persuaded that the trial court committed plain error in giving a *Secondino* charge. *Russell* v. *Dean Witter Reynolds, Inc.,* 200 Conn. 172, 192, 510 A.2d 972 (1986). Review of the defendant's claim of error would be limited to the issue of whether D or

J were "available" to testify, as that was the sole legal ground upon which the defendant eventually based his objection. *State* v. *Rothenberg,* 195 Conn. 253, 262, 487 A.2d 545 (1985). Because the defendant testified that he knew the address of D and J and that they would probably be able to testify, we conclude that there was a sufficient showing that D and J were indeed "within the power of [the defendant] to produce"; *Shelnitz* v. *Greenberg,* 200 Conn. 58, 75, 509 A.2d 1023 (1986); and, therefore, "available" to testify. Accordingly, the trial court did not err when it delivered a *Secondino* charge to the jury.

In his fourth claim of error, the defendant maintains that there was insufficient evidence to support a conviction for attempted robbery in the first degree. "Appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task: We must first review the evidence construing it in the light most favorable to sustaining the trial court's verdict. *State* v. *Williams,* 205 Conn. 456, 468, 534 A.2d 230 (1987); *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984); *State* v. *D'Antuono,* 186 Conn. 414, 421, 441 A.2d 846 (1982); *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981). ' " 'We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.' " ' *State* v. *Plourde,* 208 Conn. 455, 458, 545 A.2d 1071 (1988), quoting *State* v. *Rollinson,* 203 Conn. 641, 665–66, 526 A.2d 1283 (1987), and cases cited therein." *State* v. *Avis,* 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied,    U.S.    , 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989).

In the present case, the defendant was charged with attempted robbery in the first degree. That offense occurs when one commits a robbery armed with a dangerous instrument. General Statutes § 53a-134. Robbery is defined in General Statutes § 53a-133, which states that "[a] person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking . . . ." A person commits a larceny "when, with the intent to deprive another of property . . . he wrongfully takes, obtains or withholds such property from an owner." General Statutes § 53a-119. The defendant claims that the state did not present sufficient evidence of his intent to deprive the victim of her property because moments after he relieved her of her property he returned it to her.[7] We do not agree.

In discussing the "intent to deprive another of property," an element required for a conviction of robbery in the first degree, we have stated that the accused must *intend* both to take the property of another and to retain it. *State* v. *Kurvin,* 186 Conn. 555, 588, 442 A.2d 1327 (1982). "The requisite intent for retention is permanency." Id., 568; see General Statutes § 53a-118 (a) (3) ("deprive" means "withhold [property] or cause it to be withheld from [the victim] permanently . . ."). Intent, however, can be inferred both from the defendant's conduct and his statements *at the time of the crime; State* v. *Ghere,* 201 Conn. 289, 296, 513 A.2d 1226 (1986); *State* v. *Morrill,* 193 Conn. 602, 609, 478

[7] The defendant concedes that the state presented sufficient evidence on the other elements required for a conviction under General Statutes § 53a-134 (a) (3).

At trial there was conflicting evidence as to when the defendant actually returned the victim's property to her. Both the victim and the defendant did testify, however, that the property was ultimately returned.

A.2d 994 (1984); and "whether such an inference should be drawn is properly a question for the jury to decide. *State* v. *Sober,* [166 Conn. 81, 93, 347 A.2d 61 (1974)]." *State* v. *Morrill,* supra, 609. To be convicted of robbery in the first degree, therefore, it is not necessary for the jury to find that the defendant actually kept the property in question, but rather, that at the moment he took the property he intended to retain it permanently. See *State* v. *Coston,* 182 Conn. 430, 436, 438 A.2d 701 (1980) (evidence sufficed to sustain a conviction of larceny in the fourth degree where the defendant took a pair of shoes and thereafter returned them). Moreover, a postoffense change of heart is not a defense to a crime. W. LaFave & A. Scott, Criminal Law (1972) § 88, p. 639. Reviewing the evidence in the present case in the light most favorable to sustaining the verdict, we conclude that the jury could reasonably have found that when the defendant took money from the victim, he intended to retain it permanently. The evidence being sufficient, the jury's verdict must stand.

The defendant's final claim is that he was denied his constitutional right to due process when the trial court considered allegedly improper and off-the-record information when imposing his sentence. This argument initially focuses on remarks made by the trial court during the defendant's sentencing hearing when the court remarked that the defendant had shown no remorse for what had transpired on the night in question.[8] The defendant maintains that this statement of the court was improper. We do not agree.

In similar cases discussing the propriety of remarks made by a sentencing court, we have stated that " 'if

---

[8] The court stated: "I've had a lot of opportunity to observe Mr. Anderson in this courtroom, his demeanor, his actions and if there's one thing that strikes me that's been especially impressed upon me is his complete lack of concern, his complete lack of remorse for what transpired in this particular incident."

a sentence is within statutory limits it is not generally subject to modification by a reviewing court.[9] *United States* v. *Bernard,* 757 F.2d 1439, 1444 (4th Cir. 1985); *State* v. *Nardini,* 187 Conn. 109, 119, 445 A.2d 304 (1982). "A sentencing judge has very broad discretion in imposing any sentence within statutory limits . . . . " *United States* v. *Sweig,* 454 F.2d 181, 183–84 (2d Cir. 1972).' *State* v. *Huey,* 199 Conn. 121, 126, 505 A.2d 1242 (1986). The court may "appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come.' *United States* v. *Tucker,* 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). Due process requires, however, that information be considered only if it has some minimal indicium of reliability. *United States* v. *Baylin,* 696 F.2d 1030, 1040 (3d Cir. 1982); *State* v. *Huey,* supra, 127; see also *State* v. *Thompson,* 197 Conn. 67, 77, 495 A.2d 1054 (1985)." *State* v. *Collette,* 199 Conn. 308, 320, 507 A.2d 99 (1986). Among the factors that may be considered by a court at a sentencing hearing are the defendant's demeanor and his lack of veracity and remorse as observed by the court during the course of the trial on the merits. See, e.g., *United States* v. *Grayson,* 438 U.S. 41, 47–48, 50–52, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978); *United States* v. *Rosenberg,* 806 F.2d 1169 (3d Cir. 1986), cert. denied, 481 U.S. 1070, 107 S. Ct. 2465, 95 L. Ed. 2d 873 (1987); *United States* v. *Roland,* 748 F.2d 1321, 1327 (2d Cir. 1984); *McClain*

---

[9] In the present case, the sentence imposed by the court was well within the statutory limits. In fact, the defendant did not receive the maximum sentence for any of the crimes of which he was convicted. The maximum sentence for kidnapping in the first degree, a class A felony, is twenty-five years. The defendant received fifteen years. The maximum sentence for attempted sexual assault in the first degree, a class B felony, is twenty years. The defendant received ten years. The maximum sentence for attempted robbery in the first degree, a class B felony, is twenty years. The defendant received five years concurrent with the other sentences. See General Statutes § 53a-35a.

v. *United States,* 676 F.2d 915, 919 (2d Cir.), cert. denied, 459 U.S. 879, 103 S. Ct. 174, 74 L. Ed. 2d 143 (1982); *State* v. *Huey,* supra. The initial remarks complained of by the defendant were simply comments on the court's observations of the defendant's behavior during the course of the trial and were not improper.

The defendant argues further that his sentence was based on unreliable information. In particular, the defendant challenges a comment that was made by the court at his sentencing hearing in which the court stated that if the defendant was not incarcerated it was likely that he would commit other violent crimes in the future, including murder. In addition, the defendant contests a remark made by the court in which it stated that because it was familiar with some of the people and places mentioned by the defendant in his testimony and statements, it knew that he had lied during the trial.[10]

---

[10] The two comments complained of by the defendant were stated by the court as follows:

"One of the problems we have with people who engage in sexual assault, especially at knifepoint, or even an attempted sexual assault, is that at some point, they're going to become enraged because rape is not a sexual act in and of itself. It's become known that rape is generally an act of violence. It's an assaultive, aggressive act of violence against the person it's directed to and that this man was only expressing whatever it was that he wanted his aggressiveness—and he did it at knifepoint—and at some point in time, that aggressiveness is going to become an act of murder, it he's not stopped.

"Fortunately, he was caught, after two very serious incidents, within a period of days of each other.

"You know, unfortunately, I come from Bloomfield. So, a lot of the things he said, I knew were not true. The allegations he made against the victim's father, the allegations he supposedly made against one of the police officers—though not on the record, in side-bar conferences—just indicated to me how low this man can become in trying to justify his actions and activities. A man like this has no place in society because he's going to go out at some point in society, at some point during the course of his life, and kill somebody and for no good reason. He had absolutely no reason for any of these activities.

"No matter whatever happens with him, at some point in time, if he's ever released to the public, he's going to kill somebody. My wife, my

In addressing the defendant's claim, we note that "[a] court should refrain from comments that find no basis in the record. Nonetheless, the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence. *United States* v. *Ibarra,* 737 F.2d 825, 827 (9th Cir. 1984); *United States* v. *Lemon,* 723 F.2d 922, 933 (D.C. Cir. 1983); *United States* v. *Powell,* 487 F.2d 325, 328 (4th Cir. 1973)." *State* v. *Collette,* supra, 320–21.

In the instant case, the defendant has not established that the court's remarks were materially false or unreliable. The court's comment regarding the likelihood of the defendant committing a murder in the future was made in the context of a general discussion concerning the defendant's propensity to commit violent crimes. Such a comment was not unfounded as all of the crimes of which the defendant had been convicted were violent in nature. Moreover, the court's statement that it knew that the defendant had lied during the trial was based on the court's knowledge and observation. The trial court is not an automaton that is required to close its eyes to what has transpired at trial. The trial court, like the jury, may assess a witness' credibility and, if relevant, may comment on it. See, e.g., *United States* v. *Grayson,* supra, 50–52; *United States* v. *Matthews,* 773 F.2d 48, 52 (3d Cir. 1985); *United States* v. *Roland,* supra, 1327; *United States* v. *Martinez-Navarro,* 604 F.2d 1184 (9th Cir. 1979), cert. denied sub nom. *Enriquez-Sanchez* v. *United States,* 444 U.S. 1084, 100 S. Ct. 1041, 62 L. Ed. 2d 769 (1980). Furthermore, the defendant had an opportunity to speak at the sentencing hearing where he could have disputed

daughter-in-law, my granddaughter. I don't know who. But I think society has a right to be concerned about this man being on the streets again."

the court's observations; however, he declined to do so. The absence of a denial itself provides an important indicium of reliability. *United States* v. *Bass,* 535 F.2d 110, 121 (D.C. Cir. 1976).

Not only has the defendant proffered no evidence challenging the reliability of the court's statements, but, when the record is read as a whole, it is clear that the court did not substantially rely on any one piece of information when it determined the defendant's sentence. The sentence imposed by the court was based on its review of the defendant's presentence investigation report, his poor demeanor and lack of veracity at trial, the fact that he recently had been convicted of similar violent crimes in an unrelated case and his general lack of remorse for the crimes of which he had been convicted. These are legitimate sentencing considerations.

There is no error.

In this opinion the other justices concurred.