## STATE OF CONNECTICUT *v.* THOMAS LATORRE
### (AC 16869)

Lavery, Landau and Daly, Js.

Argued September 16, 1998—officially released January 26, 1999

*John R. Gulash, Jr.,* for the appellant (defendant).

*Richard F. Jacobson,* supervisory assistant state's attorney, with whom, on the brief, was *John F. Blawie,* assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Thomas Latorre, appeals from the judgment of conviction, following a jury trial, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2)[1] and with commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k[2] and carrying a pistol without a permit in violation of General Statutes § 29-35.[3] The defendant claims that the trial court improperly (1) failed to instruct the jury on the essential elements of robbery in the first degree, (2) sanctioned a conviction under General Statutes § 53-202k, (3) instructed the jury in defining what constitutes a completion of robbery

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[2] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm . . . shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[3] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person . . . without a permit to carry the same . . . ."

in the first degree, (4) determined that the evidence was sufficient for the jury to convict the defendant of robbery in the first degree under the second count and (5) failed to find prosecutorial misconduct on the basis of the prosecutor's final summation. We reverse the defendant's conviction in part and remand the case for a new trial on the two counts of robbery in the first degree and with direction to vacate the defendant's conviction under General Statutes § 53-202k.

The jury reasonably could have found the following facts. On January 24, 1996, at about 9:59 p.m., the victims, Pedro Vega and Tommy Rodriguez, drove to the Marina Apartments in Bridgeport to pick up Vega's girlfriend, Keesha Franveschi. After parking their car, Vega and Rodriguez proceeded to Franveschi's apartment. They intended to meet with Franveschi and a friend and then to go to a nightclub. Franveschi's friend was not ready to leave, however, so the others went to a liquor store without her. After the trio returned from the liquor store, Franveschi went to her friend's apartment to help her get ready, and Vega and Rodriguez waited outside.

As Vega and Rodriguez were waiting, they were attacked by the defendant and another male who were both wearing ski masks. The defendant accosted Rodriguez while the other man accosted Vega. The defendant, while holding a gun to Rodriguez' head, grabbed Rodriguez' gold chain but was able to take only a few links. Meanwhile, the other man pushed Vega against a wall and demanded his money. Vega, however, did not have any money and gave his gold chain and Knicks jacket to his attacker. The attackers then walked away. Franveschi had seen the attack from her friend's apartment, ran outside and unsuccessfully attempted to retrieve the jacket. Vega and Rodriguez lost sight of Franveschi and the attackers and then heard gunshots.

After hearing the gunshots, Vega and Rodriguez ran to Vega's car and drove to the police station. Meanwhile, the attackers ran to their car, put the gun and Vega's jacket in the trunk and walked away. Vega and Rodriguez soon returned to the scene with an officer, whom Franveschi led to the attackers' car. The police had the car towed to the police station, where the officers recovered various items, including the gun and jacket. The defendant was arrested and subsequently convicted. This appeal followed.

I

The defendant first claims that the trial court improperly instructed the jury. Specifically, the defendant claims that he is entitled to have his two first degree robbery convictions reversed because the trial court failed to instruct the jury on the statutory elements of robbery.

The defendant concedes that his claim is unpreserved. Nonetheless, the defendant argues that he is entitled to appellate review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We agree. Under *Golding*, a defendant can prevail on an unpreserved claim "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. The first two *Golding* conditions are determinations of whether the defendant's claim will be reviewed and the third and fourth conditions involve a review of the claim itself. *State* v. *Burgos*, 37 Conn. App. 404, 412, 656 A.2d 238, cert. denied, 233 Conn. 915, 659 A.2d 186 (1995).

The defendant's claim is entitled to *Golding* review because the defendant raises a constitutional claim involving a fundamental right and the record is adequate for review. See *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995). "If justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime." (Internal quotation marks omitted.) *State* v. *Kurvin*, 186 Conn. 555, 561, 442 A.2d 1327 (1982); see also *State* v. *Anderson*, 212 Conn. 31, 37, 561 A.2d 897 (1989).

We turn, therefore, to the third prong of *Golding*. Robbery is an offense against the person, the distinguishing characteristic of which is the intimidation of the victim. Under the plain language of General Statutes § 53a-133,[4] a person commits robbery when, in the course of committing a larceny, he or she engages in forcible conduct with a proscribed purpose. A larceny does not constitute a robbery unless the force or threat of force is for the purpose of coercing the victim in the manner described in § 53a-133. The term purpose is synonymous with the terms "object" and "intent." Intent may be determined from the inferences drawn from the defendant's conduct because intent is a mental process which ordinarily can be proven only by circumstantial evidence. *State* v. *Channer*, 28 Conn. App. 161, 166, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992).

During its jury charge, the trial court instructed the jurors on the statutory elements of larceny. The trial

---

[4] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

court then instructed the jury on the elements of first degree robbery. The court stated that "[r]obbery in the first degree reads, 'A person is guilty of robbery in the first degree when, in the course of the commission of a crime or in the immediate flight therefrom, he or another participant in the crime is armed with a deadly weapon.' What crime? In the crime of larceny, and it's being accomplished by the introduction of the use or threatened use of force, which under this statute defining robbery in the first degree, alleges as the information does, that the participants were armed with a deadly weapon. . . . There are several ways in which this offense may be committed. There are several different ways in which the force, threatened or actual use of force, can be committed. They're not charged, all of them, in this case; it's simply while armed with a deadly weapon. They were attempting to commit a larceny by the use or threatened use of force demonstrated by the presence of a deadly weapon."

In its charge, the trial court did not mention the elements of robbery under § 53a-133 and merely provided the elements of first degree robbery under § 53a-134. The court cannot properly instruct the jury of the elements of § 53a-134 without first instructing the jury of the elements of § 53a-133 because, under § 53a-134, a defendant cannot be convicted of first degree robbery without first committing a robbery. The trial court failed to instruct the jury concerning the intent requirement of § 53a-133. Although the trial court's charge arguably covered the requirement of § 53a-133 that "[a] person commits robbery when in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person," the trial court did not mention that the defendant must have engaged in that conduct "*for the purpose of*: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." (Emphasis added.) General Statutes § 53a-133.

The state argues that the trial court's instructions, when read as a whole, were constitutionally adequate because they fairly presented the law in a way that could not have misled the jury. Specifically, the state contends that because the trial court repeatedly mentioned the terms "force" and "deadly weapon," the court effectively conveyed the statutory elements of robbery under § 53a-133 to the jury. The state relies on *State* v. *Wideman*, 38 Conn. App. 581, 584, 663 A.2d 409, cert. denied, 235 Conn. 907, 665 A.2d 906 (1995), to support its argument. The state's reliance on *Wideman* is misplaced.

In *Wideman*, this court upheld a defendant's guilty plea to an attempted robbery charge despite the trial court's failure to inform him specifically that § 53a-133 requires proof of the use or threatened use of physical force against another person. We concluded that the trial court's references to the defendant about his being armed with a deadly weapon were sufficient to inform him of the nature of the crime for which he was charged since the trial court need not precisely comply with Practice Book § 31-19, formerly § 711,[5] when there are other reasons to believe that the defendant understands the statute under which he is charged. In other words, "the concept of being armed with a deadly weapon, by its very nature, was sufficient to convey to the defendant that the crime of robbery in the first degree included the use or threatened use of physical force on another." Id., 586–87.

---

[5] Practice Book § 39-19, formerly § 711, provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered . . . ."

Although a trial court is not required to comply with each and every requirement of Practice Book § 39-19, the trial court is constitutionally required to instruct the jury properly on every essential element of the crime charged. *State* v. *Leroy*, 232 Conn. 1, 7, 653 A.2d 161 (1995). A trial court's failure to instruct the jury on an element of a crime deprives a defendant of his or her right "to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Internal quotations omitted.) *State* v. *Gabriel*, 192 Conn. 405, 414, 473 A.2d 300 (1984); see *State* v. *Denby*, 35 Conn. App. 609, 614, 646 A.2d 909 (1994), aff'd, 235 Conn. 477, 668 A.2d 682 (1995). *Wideman*, therefore, is not controlling.

Finally, the state has failed to meet its burden of proving that the omission in the trial court's jury instruction was harmless. "It cannot be considered harmless error for a jury to find an accused guilty without even knowing what are the essential elements of the crimes charged." (Internal quotation marks omitted.) *State* v. *Anderson*, supra, 212 Conn. 36. Moreover, any such error could not be cured even if we were " 'satisfied after the fact of conviction that sufficient evidence was before the jury so that it would or could have found that the state proved the missing element had the jury been properly instructed.' " Id., 37. We cannot conclude, therefore, that the court's omission in the jury instruction was harmless.

Because we have concluded that the trial court's failure to instruct the jury on the intent requirement of § 53a-133 was harmful error and mandates reversal of the first degree robbery conviction, we need not address the defendant's arguments that the jury was never instructed regarding the requirements that the force be used or threatened against another person and that it must occur in the course of committing a larceny.

## II

The defendant's second claim on appeal is that his conviction under General Statutes § 53-202k must be set aside. Specifically, the defendant claims that his conviction must be reversed because, under *State* v. *Dash*, 242 Conn. 143, 698 A.2d 297 (1997), § 53-202k is merely a sentence enhancement provision, not a crime under which he could be convicted.

In view of the fact that we have determined that the defendant's conviction of robbery in the first degree must be vacated, the defendant's conviction under § 53-202k must fall. Nonetheless, even if we had upheld the defendant's first degree robbery conviction, we would be constrained to vacate his conviction under § 53-202k. As the defendant points out, in *Dash*, our Supreme Court concluded that § 53-202k was intended to serve as a sentence enhancement provision, not as a separate crime under which a defendant could be convicted; § 53-202k merely establishes an additional five year penalty for a defendant who commits a class A, B or C felony with a firearm. Id., 149. Although it was not decided until six months after the defendant was convicted, *Dash* applies retroactively to this case. See *State* v. *Tinsley*, 47 Conn. App. 716, 720, 706 A.2d 1008, cert. denied, 244 Conn. 915, 713 A.2d 833 (1998). Accordingly, even if his conviction of robbery in the first degree had not been reversed, the defendant would be entitled to have his conviction under § 53-202k vacated. See *State* v. *Carter*, 47 Conn. App. 632, 649, 708 A.2d 213, cert. denied, 244 Conn. 909, 713 A.2d 828 (1998).

Our conclusions on the defendant's first and second claims are dispositive of this appeal. We will address the defendant's claim regarding the instruction as to the definition of a completed first degree robbery because it is likely to arise on retrial. We will also address the defendant's claim that the evidence was insufficient to

support his conviction on the second count of first degree robbery because its disposition could support the defendant's acquittal on that count. See *State* v. *White*, 229 Conn. 125, 141, 640 A.2d 572 (1994).

## III

The defendant's third claim on appeal is that the trial court improperly instructed the jury about what constitutes a completed first degree robbery. Specifically, the defendant claims that the trial court reduced the state's burden of proof by instructing the jury that a robbery is complete even if it is interrupted before the robber can permanently deprive the owner of his or her property.

The defendant failed to preserve this claim at trial. He therefore seeks review pursuant to *Golding*. The state focuses on the third prong of *Golding*, arguing that no constitutional violation clearly exists that deprived the defendant of a fair trial. We agree with the state.

The trial court instructed the jury that a "robbery is a larceny, [the] taking of property of another with the intent to permanently deprive the owner of their property. A person commits larceny when, with intent to permanently deprive another of property or to appropriate the same to himself, he wrongfully takes, obtains, withholds such property from an owner. So that's the simple generic definition of a larceny. Does it have to be completed? No. A crime may be interrupted uncompleted, things can go awry, but the intent in the mind of the accused at the time the act is taking place is the question." The defendant argues that he was deprived of a fair trial because the trial court's instruction essentially amounted to a charge on attempt, but because the trial court failed to charge the jury on the statutory elements of attempt, it unconstitutionally diluted the state's burden of proof.

The defendant misunderstands the difference between the robbery statutes and the attempt statute. The trial court neither intended to instruct nor instructed the jury on the statutory elements of attempt. Under § 53a-133, a larceny becomes a robbery when the perpetrator, through the use or threatened use of force, intends to deprive another of property permanently. The defendant does not provide, nor can we find, authority supporting the proposition that a defendant commits only attempted robbery and not first degree robbery where the defendant intends to deprive another of property through the use or threatened use of force, actually does deprive the owner of that property, yet fails to deprive the owner of the property permanently because he or she is apprehended. Accordingly, the defendant has not demonstrated that the "alleged constitutional violation clearly exists and clearly deprived [him] of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 240.

## IV

The defendant's fourth claim on appeal is that the evidence was insufficient to convict him of the second count of first degree robbery. Specifically, the defendant claims that because he was charged as a principal, the jury was not instructed about accomplice liability, and that because the evidence showed that the defendant did not use or threaten to use force against Vega or actually deprive Vega of his property, the defendant could be convicted under the second count only as an accomplice.

We conclude that the evidence was sufficient to convict the defendant as a principal in the robbery against Vega. The plain language of § 53a-134 clearly indicates that a person is guilty of first degree robbery when in the course of a robbery, "he *or another participant in the crime* . . . is armed with a deadly weapon . . . ."

Here, even though an unidentified male accosted Vega, the evidence clearly established that the defendant, while standing next to Vega, threatened Rodriguez with a pistol. The defendant threatened the immediate use of force against Vega while robbing Rodriguez because the defendant and the other man were acting in concert to commit the crime. Therefore, we conclude that the evidence was sufficient to prove that the defendant acted as a principal in the robbery of Vega.

The judgment is reversed only as to the defendant's conviction of two counts of robbery in the first degree and of committing a class A, B or C felony with a firearm and the case is remanded for a new trial on those charges. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

