CLARETTE LEMONIOUS *v.* J. WILLIAM BURNS,
COMMISSIONER OF TRANSPORTATION ET AL.
(10763)

NORCOTT, LAVERY and LANDAU, Js.

Argued March 26—decision released June 9, 1992

*Louis B. Blumenfeld,* with whom was *Lorinda S. Coon,* for the appellant (named defendant).

*Allisan Lee Adams,* for the appellee (plaintiff).

NORCOTT, J. The defendant J. William Burns, commissioner of transportation (commissioner), appeals from the judgment of the trial court, rendered after a jury trial, awarding $85,000 in damages to the plaintiff for injuries she sustained as a result of the commissioner's violation of General Statutes § 13a-144,[1]

[1] General Statutes § 13a-144 provides in pertinent part: "DAMAGES FOR INJURIES SUSTAINED ON STATE HIGHWAYS OR SIDEWALKS. Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair . . . may bring a civil action to recover damages sustained thereby against the commissioner in the superior court."

one of this state's highway defect statutes. The commissioner claims (1) that the jury could not have reasonably and logically inferred from the evidence presented at trial that the road where the plaintiff fell was not closed pursuant to General Statutes § 13a-145, and (2) that the trial court's jury instruction was inadequate. We affirm the trial court's judgment.

After the verdict, the commissioner moved to set it aside as contrary to the evidence. The court then granted the motion and rendered judgment for the commissioner. The plaintiff appealed to this court. We subsequently reversed the trial court's decision and remanded the case for further consideration. See *Lemonious* v. *Burns,* 23 Conn. App. 735, 583 A.2d 1328 (1991). The trial court then denied the commissioner's motion to set aside the verdict and rendered judgment for the plaintiff on the jury's verdict. This appeal followed.

Because the facts of this case are fully set forth in our earlier decision, a brief synopsis here will suffice. On August 20, 1984, the plaintiff was on her way to a bus stop when she fell in a hole located in a public highway, where construction work was being performed under the aegis of the commissioner. The plaintiff suffered serious injuries and brought suit against the commissioner, alleging that her injuries resulted from his breach of the statutory duty under § 13a-144 with regard to maintenance of public highways. Testimony at trial disclosed that the construction foreman's daily report should have indicated whether special safety precautions were taken to prevent such incidents. The contractor's records, however, did not indicate whether such precautions were taken just prior to the plaintiff's fall.

The commissioner first claims that the jury could not have reasonably and logically reached any other con-

clusion but that the road where the plaintiff fell was legally closed, pursuant to General Statutes § 13a-145, at the time of the incident in question. We disagree.

The following additional facts are necessary to the resolution of this claim. General Statutes § 13a-145 provides in part that a person using any state highway that has been designated as closed pursuant to General Statutes § 13a-115 "shall do so at his own risk except with respect to any injury or loss not traceable to a defect caused in the process of construction, reconstruction or repair." General Statutes § 13a-115 (a) provides in part that the commissioner may close a section of a state highway "by posting notices at each end of such section of highway . . . ."

The commissioner argues that the testimony at trial established conclusively that such notices had been posted prior to the plaintiff's fall. Both Neal Robison, owner of the construction company, and Stephen Zentara, the state inspector for the project, testified that signs had been placed at each end of the construction area prior to the plaintiff's fall and that they were in place at the time she fell. The plaintiff testified, however, that she did not pass any such sign en route to the bus stop. A witness to the incident, Lillian Harrison, also testified that she did not see signs posted, although she acknowledged that they could have been in place.

It is well established that the credibility of witnesses and the weight to be accorded their testimony is a matter wholly within the province of the jury. *State* v. *Pinnock*, 220 Conn. 765, 778, 601 A.2d 521 (1992). Here, the jury chose to believe the plaintiff and Harrison as opposed to the commissioner's witnesses. The plaintiff and Harrison were on the scene at the time of the incident; the commissioner's witnesses were not. Fur-

ther, the commissioner presented no documentary or other evidence in support of his claim that the signs were posted.

Although the commissioner argues forcefully that the testimony of the plaintiff's witnesses did not contradict that of Robison and Zentara, this is unavailing because the jury may nevertheless have found the commissioner's witnesses to be lacking in credibility. Further, the commissioner argues that during Robison's testimony, a photograph of a sign was admitted into evidence, establishing that notice was posted at the time of the plaintiff's fall. The commissioner relies on the trial court's brief remark to the jury in admitting the photograph that "it's a photo of a sign at the site."

A review of the record, however, clearly shows that at no time did Robison testify that the photograph in question depicted a sign that was posted at the site the day the plaintiff fell. The record also shows that the photograph was admitted only to show the *type* of sign that would have been posted there, and that the court never changed that ruling.[2] Contrary to the commis-

---

[2] Prior to the court's ruling on the admissibility of the photograph, Robison testified as follows:

"Q. I'm going to show you a photograph that's been marked as defendant's exhibit one for identification . . . . Do you see what's depicted there, and do you recognize that as *one of the kinds of signs* used on the construction project?

"A. *One of the kinds of signs,* right.

"Q. All right. And that was placed by the department of transportation, or by your outfit?

"A. By our—it would have been our job. It would have been placed by us.

"Q. And were *such signs* placed on . . . this job site?

"A. Yes, they would.

"Mr. Ferris: Your Honor, I would offer this.

"Mr. Kazmarcyk: I'm going to object at this point. I don't believe proper foundations have been made. Counsel may not inquire as to how Mr. Robison knows whether or not *this type of sign* was placed.

"Mr. Ferris: Is that the only objection?

sioner's assertions on appeal, the record of his closing argument to the jury shows that this was his understanding as well.[3] Whether the sign was posted is a matter of fact involving a question of truth to be decided on conflicting evidence. See *Sweet* v. *Sweet,* 190 Conn. 657, 663, 462 A.2d 1031 (1983). Here, the jury apparently chose to believe the plaintiff's witnesses as opposed to those of the commissioner. Our review of the record leads us to conclude that the jury could have reasonably and logically inferred from the evidence presented that the road was not legally closed at the time the plaintiff fell.

The commissioner next claims the trial court failed to charge the jury adequately with respect to the road closure statutes, General Statutes §§ 13a-115 and 13a-145. Specifically, the commissioner claims that the court's instruction was inadequate because it contained no explanation of the statutes and did not relate them to the evidence. We disagree.

A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct ver-

---

"Mr. Kazmarcyk: And also . . . he's never established that Mr. Robison was actually on the construction site. I think it would be difficult for him to identify that photograph if he's never been on the site, Your Honor.

"Mr. Ferris: I'm not asking him to identify the photograph . . . Mr. Robison has testified that there were signs placed on this job . . . and that this is *one of the kinds of signs* that was on that job site, and on that basis I will offer it . . . .

"The Court: I'm going to overrule the objection, but stipulate that this photograph is to be used only as to indicate *the type of sign* that is put on one of Mr. Robison's sites." (Emphasis added.)

[3] Counsel for the commissioner told the jury: "[W]hen Mr. Robison was on the stand, I asked him, 'Mr. Robison, look at this photograph. It's defendant's one for identification, at this point not in evidence. You talked about signs that were posted on this job. Is this *the kind of sign* that was posted on that job throughout the course of the job?' Ask yourselves if you remember what Mr. Robison's testimony was. 'Yes, this is *the kind of sign.*' You're going to have to look at it. Says, 'Caution. Road legally closed.' . . . 'Proceed at your own risk.' This is *the kind of sign* that Mr. Zentara and Mr. Robison both said were posted at the ends of the project." (Emphasis added.)

dict. *Ellice* v. *INA Life Ins. Co. of New York*, 208 Conn. 218, 226, 544 A.2d 623 (1988). The charge is to be read as a whole, with the instructions claimed to be improper read in that context. *Carfora* v. *Globe, Inc.*, 5 Conn. App. 526, 530, 500 A.2d 958 (1985), cert. denied, 198 Conn. 804, 503 A.2d 1186 (1986). A reviewing court does not critically dissect the charge to discover possible inaccuracies. *Ellice* v. *INA Life Ins. Co. of New York*, supra. The test to determine if a jury charge is proper is whether " 'it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Jury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury.' " *Kelley* v. *Bonney*, 221 Conn. 549, 584, 606 A.2d 693 (1992), quoting *Preston* v. *Keith*, 217 Conn. 12, 17, 584 A.2d 439 (1991).

Our independent review of the entire jury instruction discloses that the court's charge with respect to the road closure statutes was neither inadequate nor so flawed that the jury was not provided with ample guidance to help it reach a correct verdict. The entire instruction fairly presented the case to the jury. Within that instruction, the court summarized the essence of the statutes at issue in ordinary laymen's terms that were clear, understandable and accurate. Moreover, parts of the commissioner's request to charge were incorporated verbatim into that portion of the court's instruction.

Although the commissioner contends that the jury could not have understood the pertinent portion of the instruction because the court itself, out of the jury's presence, indicated that it could not adequately explain the statutes, we are not persuaded. Just as in contract law, where the subjective intentions of the parties is irrelevant, here, too, we are not interested in the trial

court's subjective views about a statute's level of complexity. The issue is whether the instruction, when seen in its totality, is legally correct, adapted to the issues and sufficient to guide the jury.

We will not examine a jury charge "with [a] legal microscope." *Borsoi* v. *Sparico,* 141 Conn. 366, 371, 106 A.2d 170 (1954). The day has long passed when reviewing courts are to be considered "citadels of technicality." *Kotteakos* v. *United States,* 328 U.S. 750, 759, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946). We conclude that the court's charge to the jury with regard to the road closure statutes was not clearly erroneous when the overall charge is scrutinized within the framework of our guiding principles.

The judgment is affirmed.

In this opinion the other judges concurred.