STATE OF CONNECTICUT *v.* RAMON BURGOS
(13628)

O'CONNELL, HEIMAN and SPEAR, Js.

Argued December 5, 1994—decision released April 4, 1995

*Temmy Ann Pieszak,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan Benedict,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals[1] from a judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[2] On appeal,

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person,

the defendant claims that the trial court improperly (1) instructed the jury on (a) the concurrence principle, (b) the defense of extreme emotional disturbance and (c) the effect of intoxication on intent, and (2) precluded the defendant from offering evidence of extreme emotional disturbance and intoxication at the hearing in probable cause.[3] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant and the victim, Evelyn Padin, had a relationship for approximately nine years before her death on September 29, 1991. They met when they were sixteen years old and the victim gave birth to the first of their four children at age seventeen.

During the summer of 1991, the defendant discovered that the victim was having an affair with a man called "Camacho." When the defendant confronted the victim about her infidelity, a fight resulted and the victim asked the defendant to leave. The defendant moved into his mother's apartment in Bridgeport. His brother, Luis Burgos, and his mother's boyfriend, Luis Angel Zamot, also lived there.

During September, 1991, the defendant and the victim attempted to reconcile. On September 28, 1991, they spent the day with their four children at the defendant's mother's apartment. That evening, they

---

he causes the death of such person . . . except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] The defendant's claim concerning the absence of the trial judge from the bench during the voir dire was withdrawn in his reply brief. See *State v. Patterson*, 230 Conn. 385, 645 A.2d 535 (1994).

began to argue again about the victim's infidelity. In the course of the argument, the victim called the defendant a "cabrone," Spanish for a man who is aware of his wife's infidelity and stays with her. The defendant became enraged and left the apartment around 8 p.m. He went to a local store where he ran into Zamot, and they drank beer together.

At approximately 9 p.m., the defendant and Zamot returned to the defendant's mother's apartment. The defendant's brother, Luis, arrived home at approximately the same time. Zamot and Luis ate dinner and went into their bedrooms. The victim put the four children to bed in the defendant's room. Soon, the defendant and the victim resumed arguing and the defendant again decided to leave.

At about 11:30 p.m., the defendant returned to the apartment and he and the victim again began to argue. The defendant began crying and his mother noticed that he had been drinking but "not that much." When the defendant's mother joined Zamot in their bedroom, the defendant asked the victim to go to bed with him. The victim refused and started for the kitchen. She told the defendant that she was leaving him for Camacho, and the defendant blocked her way. He told the victim that he would kill her before he let her go anywhere.

The defendant's mother heard a loud noise coming from the kitchen and went to investigate. The victim was holding onto her neck with her hand and asked the defendant's mother to call an ambulance. The defendant blocked her way to the telephone. The defendant's mother ran back to her bedroom to awaken Zamot to help. The victim then headed into Luis' room and screamed for him to wake up and help her. Luis saw that the victim was covered with blood and attempted to restrain the defendant from hurting her further, but the defendant slipped from his grasp.

The defendant walked into the living room and grabbed his mother. Luis ran from his room and pushed the defendant away from their mother and told her to wait in the kitchen. Meanwhile, the defendant went to Luis' room and closed the door. Luis opened the door and saw the defendant kicking the victim, who was lying on the floor near Luis' bed. Luis stopped the defendant and asked him to leave. The defendant stated, "Now I killed her and I [am] going to turn myself in. . . . The bitch got what she deserved." He then asked Luis to get him some clothing and money.

When Zamot awoke, he attempted to leave the apartment to call the police. The defendant threatened him with a bloody bat and said that no one was going to leave the house. The defendant changed his clothes and told his family that if he had not killed her, he would be "back to finish the job." He also told his family that they would never see him again.

Luis walked with the defendant to the train station where the defendant took a taxi to go to New Haven. When the defendant reached West Haven, he asked the driver to return him to Bridgeport where he was apprehended by the police.

The victim was found covered with blood, lying on the floor of Luis' bedroom. Two broken kitchen knives were found on the floor beside her body and the bloody bat was found in the kitchen. An autopsy revealed that the victim suffered numerous stab wounds, one of which severed the carotid artery. In addition, the autopsy revealed that the victim had suffered several severe blows to the head that resulted in a skull fracture and bruising of the brain. The medical examiner determined that either the stab wound to the carotid artery or the blunt trauma to the head could have caused the death of the victim.

## I

The defendant first claims that the trial court incorrectly instructed the jury on (a) the concurrence principle, (b) the defense of extreme emotional disturbance and (c) the effect of intoxication on intent. We disagree.

We begin by setting forth our standard of review of claims of improper jury instructions and then turn to a separate analysis of each of the defendant's claims. "When we review jury instructions, we are obligated to view the charge itself in the context of the whole trial." *State* v. *Patterson,* 35 Conn. App. 405, 417, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). "[J]ury instructions are not to be subjected to microscopic examination with an eye toward discovering possible inaccuracies. . . . Rather, the entire charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." (Citations omitted.) *State* v. *Williams,* 27 Conn. App. 654, 672, 610 A.2d 672, cert. denied, 223 Conn. 914, 614 A.2d 829 (1992).

"Jury instructions need not be exhaustive, perfect or technically accurate. . . . *Preston* v. *Keith,* 217 Conn. 12, 17, 584 A.2d 439 (1991); *State* v. *Wolff,* [29 Conn. App. 524, 531, 616 A.2d 1143 (1992)]; *Lemonious* v. *Burns,* 27 Conn. App. 734, 740, 609 A.2d 254, cert. denied, 223 Conn. 915, 614 A.2d 823 (1992). To pass constitutional muster, jury instructions must be correct in law, adapted to the issues in the case and sufficient to guide the jury in arriving at a verdict. *State* v. *Wolff,* supra, 531. The test that we apply to any part of the charge is whether the charge as a whole presents the case to the jury in such a manner that no injustice is perpetrated. *State* v. *Derrico,* 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d

607 (1980); *State* v. *Andrews*, 29 Conn. App. 533, 540, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993)." (Internal quotation marks omitted.) *State* v. *Patterson*, supra, 35 Conn. App. 417–18.

## A

The defendant first asserts that the trial court's instructions on the issue of intent violated the "concurrence principle." The defendant argues that the trial court's instructions allowed the jury to convict the defendant of murder even if he did not possess the intent to kill at the time that the fatal injury was inflicted. The defendant also asserts that the charge as given improperly allowed the jury to base its verdict on the most culpable state of mind possessed by the defendant during the entire incident rather than the defendant's state of mind at the very moment he inflicted the injury that lead to the victim's death. We disagree.

The following additional facts are necessary to a resolution of this issue. During the initial instructions to the jury, the trial court stated that in order to convict the defendant of a particular crime, the jury had to find that he harbored the requisite intent at the time that he committed the acts that resulted in the victim's death.[4] The defendant did not except to this charge.

During deliberations, the trial court received a note from the jury asking whether the relevant mental state was that which existed at the beginning or the end of

[4] The trial court's initial instructions on intent were as follows: "Now, intent. I've told you this is a specific intent crime. The intent must be demonstrated to have existed in the mind of the actor at the time of the acts complained of. A person acts intentionally with respect to a result—this is a statutory definition in this case, [it] controls me and you. A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, murder, when his conscious objective is to cause such a result or to engage in such conduct. Intentional conduct is purposeful conduct rather than conduct that is accidental or inadvertent."

the act.[5] The trial court responded that the relevant intent was that which the defendant harbored when he initiated the assault on the victim. The trial court also informed the jury that intent could change at any time during the course of committing the act. The trial court further stated that in order to find the defendant guilty of manslaughter, the jury had to find that the defendant did not intend to kill the victim.[6] The defendant failed to except to the trial court's response to the jury's inquiry.

We are not bound to review claims of error in jury instructions if the party raising the claim did not either submit a written request to charge or promptly except to the charge after it was delivered. Practice Book § 852.[7] The defendant filed no request to charge on the issue of the required concurrence of the act and intent to commit a particular crime. He objected to neither the initial charge nor the trial court's response to the jury's question regarding the relevant time at which to consider intent.

---

[5] The note from the jury read: "When it comes to deciding between manslaughter and murder, do you make the decision the moment the accused started to hit her; his state of mind then? Or does it go until the very end; his state of mind at the end of the act? Please clarify?"

[6] The trial court's response to the jury's inquiry stated: "In order to convict the accused of murder, you would have to find that he had the intent to take the life of Evelyn Padin at the time he initiated any assault upon her. You must also recognize that an intent can change instantly in the mind of an actor during the course of conduct." In clarifying and comparing the levels of intent required for murder and manslaughter the trial court further stated that "in considering [the offense of manslaughter], you would have to find that there was never an intent to kill."

[7] Practice Book § 852 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

The defendant, however, claims to be entitled to extraordinary review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), because the concurrence requirement is an essential element of the offense of murder. Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "The first two conditions of *Golding* are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen*, 222 Conn. 591, 603, 610 A.2d 1177 (1992); *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852 (1994); see also *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987)." *State* v. *Walker*, 33 Conn. App. 763, 769, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1209 (1994).

We will review the defendant's claim as the record is adequate and the alleged violation is of constitutional magnitude because it involves intent, which is an essential element of the crime of murder. *State* v. *Hinton*, 227 Conn. 301, 308, 630 A.2d 593 (1993). We conclude, however, that the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

The trial court repeatedly informed the jury that the state had the burden of proving that the defendant harbored the requisite intent at the time of the commis-

sion of the acts that resulted in the victim's death.[8] It is not reasonably possible that the jury was misled by the trial court's response to its inquiry about when that intent had to be formed. The trial court's instructions, when viewed as a whole, informed the jury that, in order for it to convict the defendant, the jury had to find that he had the requisite intent at the time that he committed the assault on the victim and precluded the jury from improperly convicting the defendant on the basis of intent formed after the acts were committed.

## B

The defendant also asserts three claimed improprieties in the trial court's instructions on the affirmative defense of extreme emotional disturbance. The defendant claims that the charge given incorrectly (1) defined "extreme" as "the greatest intensity away from the normal state of the defendant," (2) characterized that defense as a modifier of intent rather than as an excuse that lessens culpability, and (3) required the jury to focus only on the "cold, hard facts" of the case rather

---

[8] In addition to the initial charge on intent set forth in footnote 4, the trial court stated the following when discussing the specific charge of murder: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person. There are two elements, each of which the state must prove beyond a reasonable doubt in order to sustain a conviction here. I say two because identification is not an issue in this case. The accused admits that he is the one who was present committing the acts complained of. What those acts result in is up to you. First, this defendant had at the time, in his mind, the intent to cause the death of Evelyn Padin. And second, that acting with that intent, he caused the death of that person by inflicting stab wounds as indicated in the evidence in this case.

\* \* \*

"To summarize, in order for you to convict the accused, the state must have proven beyond a reasonable doubt that the defendant had the intent to cause the death of another, Evelyn Padin. And acting with that intent, he did in fact cause the death of Evelyn Padin."

than to attempt to understand sympathetically whether the defendant's situation put him under an extreme emotional disturbance. We conclude, however, that this claim has not been properly preserved for our review.

The defendant filed only a general request to charge seeking an instruction to the jury on the affirmative defense of extreme emotional disturbance.[9] He did not request that the charge contain any specific language or points of law. No definition of "extreme" was offered by the defendant to the trial court, nor was that defense defined as one that lessens culpability rather than modifies intent. The defendant did not request that the jury be instructed against viewing the case as a set of "cold, hard facts" in light of the emotional content of the defense. After the instructions were read to the jury, the defendant failed to object or to except to those instructions in any way.

Although the claim was not properly preserved before the trial court; see Practice Book § 852; the defendant again claims review under *State* v. *Golding*, supra, 213 Conn. 233, or the plain error doctrine. Practice Book § 4185. Our Supreme Court has determined, however, that improper jury instructions concerning the defense of extreme emotional disturbance are not constitutional in nature and therefore do not merit the extraordinary review provided by *Golding*. *State* v. *Foreshaw*, 214 Conn. 540, 546, 572 A.2d 1006 (1990); *State* v. *Suggs*, 209 Conn. 733, 751, 553 A.2d 1110 (1989).

Nor will we afford plain error review. "Practice Book § 4185 provides that this court may in the interests of justice notice plain error not brought to the attention of the trial court. Such review is reserved for truly

---

[9] The defendant's request to charge on the issue of extreme emotional disturbance stated only: "The defendant requests that the court charge the jury on the affirmative defense of extreme emotional disturbance pursuant to § 53a-54a (a) Connecticut General Statutes and § 53a-55 (a) Connecticut General Statutes."

extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Foreshaw*, supra, 214 Conn. 546. This is not such a case because the instruction as given does not contain any glaring misstatements that could have misled the jury.

## C

The defendant's final claim concerning the jury charge concerns the trial court's instructions on intoxication. The defendant asserts that the instructions unconstitutionally diluted the state's burden of proving intent beyond a reasonable doubt.[10] In support of this claim, the defendant claims that the instruction improperly (1) instructed the jury to consider intoxication only if it was so severe that the defendant was not capable of forming the requisite intent and (2) prohibited the jury from considering whether any intoxication less than total intoxication had an effect on the state's ability to prove specific intent beyond a reasonable doubt. We again disagree.

Although the defendant requested that the trial court charge the jury on the issue of intoxication, his request was merely general in terms and did not propose specific language or points of law to be included in the charge.[11] Nor did the defendant except to the charge as given. The defendant again claims review under

---

[10] The defendant alleges that his rights to due process were abridged in violation of article first, §§ 8 and 9, of the constitution of Connecticut and the fourteenth amendment to the constitution of the United States. The defendant does not, however, claim that the state constitution affords any greater protection than that provided by the federal constitution. We need not, therefore, conduct a separate analysis under the Connecticut constitution.

[11] The defendant's request merely stated: "The defendant requests that the court charge the jury on intoxication as a factor in determining if a reasonable doubt exists on the element of specific intent to kill."

*State* v. *Golding,* supra, 213 Conn. 233. "We [will] review this claim because it alleges that there was a shifting or diminishing of the state's burden of proof and that there was constitutional error in the instructions on intent, which constitutes a violation of a fundamental constitutional right." *State* v. *Brown,* 35 Conn. App. 699, 703, 647 A.2d 17, cert. denied, 231 Conn. 932, 649 A.2d 254 (1994), citing *State* v. *Stevenson,* 198 Conn. 560, 567–72, 504 A.2d 1029 (1986).

Viewing the charge as a whole, we cannot say that the jury was mislead as to the state's burden of proof on the issue of intent and the relationship of intoxication to that burden.[12] The trial court began its instruc-

---

[12] The trial court's instructions on the relationship between intent and intoxication are as follows: "Consider everything you've heard from anybody bearing on the question of intoxication. You will recall that there was evidence offered by the defendant and others that he was intoxicated. Others for sure. . . . It's for you to determine how often, how much. But look for the evidence on that. Look for the evidence. I don't suggest it either way, but you have to look for it. And then, of course, the evaluation of other people about seeing him and whether they recognized at the time, from their history together, do they qualify . . . [if they are] able to give opinions about another person's conduct, if they have a basis to reach that opinion.

"The law of intoxication and how it relates to the issue of intent: Our statute, insofar as [it] is relevant here, says that intoxication is not, understand, is not a defense to a criminal charge. But in any prosecution for an offense, evidence of the defendant's intoxication may be offered by the defendant whenever it is relevant to negate an element of the crime charged. Intoxication here means a substantial disturbance of mental and physical capacities resulting from the introduction of substances into the body, including alcohol.

"As applied here, it means that if you find that the defendant was so intoxicated that he was not mentally able to even form the intent to commit the crime, then the intent element of the crime charged would not be proven and you would be required to acquit the defendant of that charge. This does not mean, however, that the defendant has the burden of proving that he was too intoxicated to form the intent required as an element of the crime. The state retains the burden of proof, beyond a reasonable doubt, on this issue of intent as on all other elements of the crime.

"The simple fact alone, however, that the defendant may have been intoxicated at the time the crime was committed is not enough for you to find

tion with the statutory definition of intoxication and then addressed that portion of the statute that provides that intoxication is not a defense to a criminal prosecution but may be considered to negate the requirement of intent. See General Statutes § 53a-7. The trial court repeatedly instructed the jury that the state continued to have the burden of proving beyond a reasonable doubt that the defendant harbored the specific intent required by each crime. In fact, the trial court specifically informed the jury, on more than one occasion, that the defendant had no burden to disprove the state's case. The trial court was also careful to instruct the jury to "look at the whole situation and see whether it has a bearing on the existence of the requisite intent in this case." The defendant's claim that the jury's consideration of intoxication evidence was improperly limited is without merit. See *State* v. *Stevenson*, supra, 198 Conn. 572; *State* v. *Fernandez*, 27 Conn. App. 73, 84–85, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992); *State* v. *Williams*, 25 Conn. App. 456,

for the defendant on this issue. You must, if you are to find for the defendant on this issue, find that while he was committing the physical assault upon the victim, if you find that fact proven that he was so intoxicated that his mind was incapable of forming the intent to do so, it is only if you find that his intoxication was to this degree and with this result that you should consider it. If, however, you find that he was not intoxicated or that he was intoxicated but not so extremely so that he could not form the required intent, you should disregard the evidence of his intoxication and not consider it in his defense.

"The defense interjects, through the questions put to witnesses, the presence of alcohol in the case and the claim that the defendant's intent would be modified by the consumption of alcohol in the person of the defendant. The state says there's alcohol in the case for the evidence produced here, but relies on your view of the entire facts and circumstances including statements made by the accused at the time to his mother, to his . . . girlfriend . . . . So you have to look at the whole situation and see whether it has a bearing on the existence of the requisite intent in this case. Whether or not the defendant was so intoxicated that he could not, and did not, form the required intent is a question of fact. Whether it is otherwise, is also a question of fact for you to determine."

459–60, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991).

We conclude that the trial court's instructions on the law of intoxication, when viewed as a whole, did not mislead the jury or deprive the defendant of a fair trial. "The court's statement, contrary to the defendant's claim, that voluntary intoxication was significant only when it has proceeded so far as to have affected the operation of the mind of the accused and made him incapable for the time being of forming a rational intent or of controlling his will, was correct not only in the context of this charge on intoxication, but as a statement of law." *State* v. *Stevenson*, supra, 198 Conn. 570.

## II

The defendant next claims that the trial court improperly precluded him from offering evidence of extreme emotional disturbance and intoxication at the hearing in probable cause. We disagree.

The following facts are necessary to the resolution of this issue. A hearing in probable cause was held on November 7, 1991, pursuant to General Statutes § 54-46a.[13] The state presented testimony by Detectives Eugene Redmond and Richard Herlihy of the Bridgeport police department and Luis Burgos. The defend-

---

[13] General Statutes § 54-46a provides: "(a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving

ant was given an opportunity to cross-examine each witness and did ask several witnesses about whether the defendant showed signs of intoxication and whether the defendant had indicated that he was upset about the victim's infidelity. On cross-examination of Luis Burgos, the defendant asked if the witness knew whether the victim had had sex with the defendant's step-brother, Victor Castro. On the state's objection, the defendant informed the trial court that the question was relevant to the issue of his defense of extreme emotional disturbance. The trial court sustained the state's objection.[14]

At the close of the state's evidence, the trial court made an initial finding of the existence of probable cause. The defendant was then given an opportunity

chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

[14] The following colloquy took place between counsel and the trial court regarding the defendant's question to Burgos:

"The Defendant: Now, do you know whether or not Ms. Padin ever had sex with Victor Castro?

"The State: That's objected to, if Your Honor please.

"The Defendant: Your Honor, I claim it. It goes—

pursuant to General Statutes § 54-46a (b) to make a specific offer of proof to present evidence sufficient to rebut that initial finding. The defendant's offer of proof included a proposal to introduce the testimony of his mother and Zamot regarding the defendant's intoxication and his reaction to the victim's infidelity. The trial court found that the evidence offered would not be sufficient to rebut its finding of probable cause and prohibited the defendant from calling the witnesses.[15]

We review claims that a trial court improperly prohibited a defendant from introducing evidence to rebut

"The State: It's entirely immaterial.

"The Defendant: It's not. It goes—one of the things that the state has to establish here, Your Honor, is intent. That—granted they don't have to prove intent beyond a reasonable doubt, but they do have to put evidence on there of that in an effort to convince the court that there is reason to believe that this gentleman committed the crime of murder.

"Now, clearly if there is evidence that a witness can provide to refute that issue and—then I think—I think that it certainly is relevant because it would go to whether or not he had the intent to kill or whether or not he was suffering from an extreme emotional disturbance. And if the court is convinced of that, then there is no probable cause for this murder.

"The Court: I don't think the sexual conduct of the victim would negate the defendant's intent.

"The Defendant: Well, no. Certainly—I'm sorry. I'm sorry to interrupt Your Honor. You were talking. I'm sorry.

"The Court: No, that's it. So, I'm going to sustain the objection.

"The Defendant: Okay. Exception, please, Your Honor. And if I could just have the court's permission, just to revisit that issue just briefly."

"The Court: All right.

"The Defendant: It's not the sexual conduct of the victim that negates intent, but it is whether that conduct occurred and what effect it had on him. And so his reaction to that conduct is what's relevant. And that would be the reason for getting there. It's not—it's—

"The Court: Not for probable cause purposes . . . but that might be admissible in a full-blown trial, should there be a defense along those lines. But certainly for probable cause the past sexual conduct of the victim here, given the testimony so far by all of the witnesses, I don't believe is relevant.

"The Defendant: All right. Thank you very much for listening to me, Your Honor. Exception please, Your Honor."

[15] The trial court stated: "All right. Well, the—again, pursuant to the statute, § 54-46a (b), having found probable cause, the defendant is entitled

a finding of probable cause as we do ordinary evidentiary rulings. *In re Michael B.*, 36 Conn. App. 364, 381, 650 A.2d 1251 (1994). "Our analysis of challenges to the evidentiary rulings by a trial court is guided by a well settled standard of review. It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . *Curry* v. *Burns*, 33 Conn. App. 65, 68, 633 A.2d 315 (1993)." (Internal quotation marks omitted.) *In re Michael B.*, supra, 381.

"Under § 54-46a (b) . . . if the court finds probable cause based on the state's evidence, then the accused may make a specific offer of proof to rebut the finding of probable cause. *In re Keijam T.*, [221 Conn. 109, 126, 628 A.2d 562 (1992)]. The accused gains the right to present that evidence only 'if the court deter-

to make a specific offer of proof, including the names of witnesses who would testify and produce evidence. And that section goes on to state: 'The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.' And what I will find, that given the proffer, even if that evidence were presented to the court, that would not be sufficient to rebut the finding of probable cause which I've made.

"And, again, without reiterating all of the evidence presented, in that regard I would simply point out the testimony of the defendant's brother, Luis Burgos, who testified as to the circumstances he observed on the night in question. And aside from his observations of the victim, the defendant's actions as related by Luis Burgos, telling Mr. Burgos and their mother to get out of the room, menacing each with a bat, telling the mother that he would kill her, the defendant's having told [Zamot], mother, and Luis Burgos that he would kill them if they called the police, the defendant's having thereafter gone over to the victim and kicked her three times in the head, and further relating oral statements to Luis Burgos identifying the fact that he was tired of being called a cabrone as the reason that he did it. In light of that testimony, I will find that, again, even if that proffered testimony by the defendant were presented, it is not sufficient to rebut my finding of probable cause based on the evidence which has been presented."

mines [in its discretion] that such evidence would be sufficient to rebut the finding of probable cause.' General Statutes § 54-46a (b); *In re Keijam T.*, supra, 126; *State* v. *Zaporta*, 36 Conn. App. 250, 252, 650 A.2d 582 (1994). The purpose of this procedure is to exclude evidence that, even if believed, would not undermine the court's antecedent finding of probable cause while, at the same time, safeguarding the accused's interest in attempting to persuade the court that, despite the state's evidence, probable cause is lacking. *In re Keijam T.*, supra, 126.'' *In re Michael B.*, supra, 36 Conn. App. 381–82.

Here, the court determined that the evidence sought to be introduced was not sufficient to rebut its finding of probable cause. Evidence that tends to negate intent or to reduce culpability may be relevant to a defendant's guilt, but will not necessarily rebut a finding of probable cause that an offense has been committed and that it was committed by the accused. See General Statutes § 54-46a (a). The court did not abuse its discretion in not admitting the proffered evidence.

The judgment is affirmed.

In this opinion the other judges concurred.