# STATE OF CONNECTICUT *v.* DEREK MAIA
## (AC 16931)

Landau, Schaller and Freedman, Js.

Argued February 26—officially released May 19, 1998

*Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, was *John A. Connelly*, state's attorney, for the appellee (state).

*Opinion*

FREEDMAN, J. The defendant, Derek Maia, appeals from a judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] On appeal, the defendant claims that the trial court improperly (1) charged the jury that intoxication was relevant only to negate the specific intent required for murder and failed to instruct that it could also be affirmative proof of recklessness for the lesser included offenses, (2) shifted and diluted the state's burden of proof in its charge on intoxication, (3) charged the jury regarding the statutory definition of intent and (4) commented on the defendant's interest in the outcome of the case. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 29, 1993, a community newspaper association known as Da Ghetto held a fund-raising Halloween party at the Casa Mia restaurant in Waterbury. The purpose of the event was to raise money so that Da Ghetto could purchase a computer. The admission to the party was $5, unless the guest wore a costume, in which case admission was $4. Food and beer were provided to the guests, and a prize was to be awarded for the best costume.

Casa Mia was filled to capacity during the party. The defendant arrived between 11 and 11:30 p.m. Upon his

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

arrival, the defendant complained about having to wait outside for a long time before he was admitted inside. The party had been planned to continue until 2 a.m. on October 30, 1993. At some point, however, Mark Yates, the senior editor of Da Ghetto, announced that the party was ending early because of "inappropriate conduct." People at the party became upset after that announcement was made.

The defendant angrily confronted Yates about ending the party early and demanded his money back. Yates did not have any small bills and gave the defendant $20. The defendant then had an altercation with Leroy Flint, an employee of Casa Mia and the boyfriend of the restaurant owner, Delores Trudeau, and had further altercations with his brother and his cousin when they tried to calm him, and with Yates' brother. The defendant, who was described as acting "like a typhoon," pushed and shoved anyone who was in his path. Trudeau overheard the defendant state that "someone was going to stop breathing."

The defendant eventually left Casa Mia with his friend, Brian Brown. The defendant and Brown drove to the house where Brown's girlfriend lived. Once there, Brown went inside and the defendant waited in the car. After about five minutes, Brown returned and gave the defendant a bag containing a gun. The defendant and Brown then proceeded back to Casa Mia.[2]

At approximately 1 a.m. on October 30, 1993, Martin Hayre, Michael Millhouse and the victim, Christopher Love, were leaving Casa Mia together. Hayre and the victim walked out of Casa Mia and waited on the curb

---

[2] The defendant testified that he did not know where they were going when they left the house where Brown's girlfriend lived. He testified that they were "just riding and we end up back at the Casa Mia bar." He further testified that "I was a fool. I was stupid. . . . [I did] not know that we were going back to the bar. This was not my car, I was just riding."

for Millhouse to come with his car. When Millhouse pulled his car up, the victim opened the front passenger door and Hayre opened the right rear door. As they were getting into the car, the defendant approached, said something to the victim[3] and then shot the victim in the face. The victim died of a gunshot wound to the head.

At trial, the defendant admitted that he was responsible for the victim's death. He testified, however, that he did not intend to take the victim's life. The defendant testified that he had been drinking and had smoked marijuana that night. He testified that he did not leave the gun in the car when he and Brown returned to Casa Mia because he had been in previous arguments at the bar and had been jumped by several people. He testified that he approached the victim and wanted to talk to him about the way the party was ended. At that time, the gun was in the defendant's shirt pocket, with the handle hanging out. The defendant testified that he heard footsteps behind him and that as he was going to turn around, he was "yanked from the back by [the] hood." His arm then went up and the gun went off.

The defendant was convicted of murder and sentenced to a term of sixty years imprisonment.

## I

The defendant first argues that the trial court improperly instructed the jury regarding intoxication and manslaughter under General Statutes §§ 53a-55 (a) (3) and 53a-56 (a) (1). Specifically, the defendant claims that the court deprived him of due process by limiting the jury's use of evidence of intoxication to negate the specific intent required for murder and by failing to

[3] Several witnesses testified that the defendant said something to the effect of, "Ph.D., where's your boys at now, where's your Ph.D. now?" prior to shooting the victim. The victim, who was involved with publishing Da Ghetto, had been working toward his Ph.D. at the University of Rhode Island.

instruct the jury on intoxication as proof of reck-
lessness.[4]

As an initial matter, we note that the defendant did
not file a request to charge on intoxication or on the
lesser included offenses and did not object to the court's
instructions. The defendant, nonetheless, argues that
this claim is reviewable on appeal pursuant to *State* v.
*Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[5]

[4] The trial court charged the jury in relevant part: "Now, [there has] been
some testimony to the effect that the defendant was under the influence of
an intoxicant, namely, liquor, marijuana or both, at the time of the alleged
acts. The penal code defines intoxication as a substantial disturbance of
mental or physical capabilities resulting from the introduction of substances
into the body. If you find that the defendant was under the influence of an
intoxicant at the time of the alleged act, you must then determine what
effect, if any, this voluntary intoxication had on his ability to form the
specific intent required to commit the alleged crime.

"Intoxication shall not be a defense to a criminal charge but in any
prosecution for an offense, evidence of an intoxication of the defendant
may be offered by the defendant whenever it's relevant to negate an element
of the crime charged. Now, note that intoxication is not a defense to or an
excuse for the commission of a crime. It's only relevant to negate an element
of the crime charged, such as intent. If you find that the defendant was
intoxicated at the time of the crime, you may take this fact into consideration
in determining whether he was in such a state of intoxication as to be
incapable of forming the required specific intent, which is a necessary
element for the commission of a crime.

"Now, in this particular case the crime of murder has the element of
specific intent, as you'll see. In other words, this is a legal concept or
principle to consider in connection with the charge of murder, as you'll see.
One element of murder is the specific intent to cause someone's death. I
charge you further that if you believe that the defendant, although intoxi-
cated, was still capable of possessing a specific criminal intent, then his
responsibility is the same as if he were not intoxicated. You must first decide
whether the defendant was intoxicated at the time of the alleged crime and,
second, whether he was incapable of possessing an intent to commit the
act constituting, in this case, murder. Remember, the defendant does not
have to prove that he was intoxicated. The state always has the burden of
proving beyond a reasonable doubt that the defendant was capable of form-
ing the required intent. Any degree of intoxication, not merely total intoxica-
tion, may be considered in determining whether or not the defendant
possessed the requisite intent."

[5] The defendant can prevail pursuant to *Golding* only if "(1) the record is
adequate to review the alleged claim of error; (2) the claim is of constitutional

or, alternatively, under the plain error doctrine as set forth in Practice Book § 4061, now Practice Book (1998 Rev.) § 60-5.[6] We disagree.

In *State* v. *Ortiz*, 217 Conn. 648, 588 A.2d 127 (1991), the defendant, like the defendant in the present case, was convicted of murder in violation of § 53a-54a (a). On appeal, the defendant claimed, inter alia, that his federal and state constitutional rights had been violated by the trial court's charge to the jury. Specifically, the defendant took issue with the trial court's charge that evidence of his intoxication should not be considered in determining whether he had possessed the mental state of recklessness necessary for conviction of the lesser included offenses of manslaughter in either the first or second degree. The defendant sought review of this claim pursuant to *Golding* or, alternatively, as plain error.

Our Supreme Court declined to afford *Golding* review to this claim, stating that "[b]ecause a lesser included offense instruction is purely a matter of common law, and therefore does not implicate constitutional rights . . . the defendant has failed to satisfy the second condition of *Golding*." (Citations omitted.) Id., 659. The Supreme Court likewise concluded that this claim was not reviewable as plain error, stating that "[s]ince the jury, having been instructed not to consider lesser included offenses unless it found the defendant not

magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

[6] Practice Book § 4061, now Practice Book (1998 Rev.) § 60-5, provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

guilty of the greater offense of murder, found the defendant guilty of murder, we cannot say that the instruction challenged by the defendant undermined the fairness of his trial or resulted in a manifest injustice to him." Id., 660;[7] see also *State* v. *Austin*, 244 Conn. 226, 240–41, 710 A.2d 732 (1998).

We conclude, on the basis of *State* v. *Ortiz*, supra, 217 Conn. 658–60, that the defendant's claim is not reviewable pursuant to *Golding* or the plain error doctrine.[8]

## II

The defendant next argues that the trial court improperly instructed the jury in connection with intoxication that the state had the burden of proving "that the defendant was capable of forming the required intent" for murder. According to the defendant, the trial court charged that to negate specific intent, the intoxication evidence must show that the defendant was "incapable" of possessing the required intent, and that this incapacity was the threshold for consideration of intoxication evidence. The defendant argues that this charge impermissibly shifted and diluted the state's burden to prove intent beyond a reasonable doubt. We disagree.

---

[7] In the present case, the trial court similarly instructed the jury as follows: "Bear in mind that you do not go to the lesser included offenses unless and until you unanimously agree that the defendant is not guilty of murder. So that's the first charge you consider. Unless and until you unanimously agree that the defendant is not guilty of murder, only after that do you go on to the lesser included offenses."

[8] In so holding, we note the defendant's claim that *State* v. *Ortiz*, supra, 217 Conn. 648, was wrongfully decided. We further note, however, that "[t]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Fleming*, 36 Conn. App. 556, 573, 651 A.2d 1341, cert. denied, 233 Conn. 913, 659 A.2d 186 (1995). Furthermore, the Supreme Court has recently decided *State* v. *Austin*, supra, 244 Conn. 240–41, in which it cites *Ortiz* for the proposition that the claim made by the defendant is not reviewable pursuant to *Golding* or as plain error.

We initially note that the defendant did not file a request to charge and did not except to the charge as given. He therefore requests review of this claim pursuant to *State* v. *Golding,* supra, 213 Conn. 239–40, and, alternatively, as plain error. This claim is reviewable under *Golding* "because it alleges that there was a shifting or diminishing of the state's burden of proof and that there was constitutional error in the instructions on intent, which constitutes a violation of a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Burgos,* 37 Conn. App. 404, 416, 656 A.2d 238, cert. denied, 233 Conn. 915, 659 A.2d 186 (1995).

We conclude, however, on the basis of our review of the charge as a whole, that it is not reasonably possible that the jury was misled as to the scope of the state's burden of proof on the element of specific intent and the relationship of intoxication to that burden.[9] The trial court instructed the jury as to the statutory definition of intoxication and then addressed that portion of the statute providing that intoxication is not a defense to a criminal prosecution but may be considered to negate the requirement of intent. General Statutes § 53a-7. The court then charged that "[i]f you find that the defendant was intoxicated at the time of the crime, you may take this fact into consideration in determining whether he was in such a state of intoxication as to be incapable of forming the required specific intent which is a necessary element for the commission of a crime." The trial court then made further references to the defendant's "capability" of forming the required intent. See footnote 4.

---

[9] "In reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge as a whole presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Cartagena,* 47 Conn. App. 317, 320, 708 A.2d 964 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

Later, in connection with the court's charge on the specific elements of the crime charged, the court repeatedly instructed the jury that the state had the burden of proving specific intent beyond a reasonable doubt. See footnote 11. Instructions similar or identical to the charge given have been upheld by our Supreme Court in *State* v. *Austin*, supra, 244 Conn. 238–40, *State* v. *Ortiz*, supra, 217 Conn. 663, and *State* v. *Stevenson*, 198 Conn. 560, 571, 504 A.2d 1029 (1986), and by this court in *State* v. *Burgos*, supra, 37 Conn. App. 418, and *State* v. *Fernandez*, 27 Conn. App. 73, 85–86, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992).

The defendant has, therefore, failed to satisfy the third prong of *Golding*[10] and is not entitled to further review of this claim on that basis. Additionally, the defendant has failed to establish how this claim rises to the level of plain error.

### III

The defendant next argues that the trial court improperly charged the jury regarding intent when it charged, pursuant to General Statutes § 53a-3 (11), that "[a] person acts intentionally with respect to the result or conduct described by a statute defining an offense when his conscious objective is to cause such result or engage in such conduct." According to the defendant, this charge permitted the jury to return a murder conviction based on a general intent to engage in conduct, rather than the required intent to cause a specific result, namely, death.[11] Although the defendant did not file a

[10] The third prong of *Golding* requires that "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 239–40.

[11] The trial court charged in relevant part as follows: "Now, the defendant is charged with the crime of murder. A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person. [I'll] [r]ead it again. With intent to cause the death of another person, he causes the death of such person.

"For you to find the defendant guilty of this charge, the state must prove

request to charge and did not except to the charge as given, he argues that this claim is reviewable pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, and as plain error. We will review this claim because "[a]n improper instruction on an element of an offense . . . is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Austin*, supra, 244 Conn. 235.

"We first note that [t]he specific intent to kill is an essential element of the crime of murder. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim." (Internal quotation marks omitted.) Id., 235. Although "[w]e agree with the defendant that that portion of § 53a-3 (11) dealing with intent to engage in proscribed conduct is

the following elements beyond a reasonable doubt. Number one, that the defendant intended to cause the death of another person, in this case, Christopher Love. And number two, that in accordance with that intent, the defendant caused the death of Christopher Love.

"Now, I'm going to explain what those elements mean in the legal sense. With respect to the first element, which must be proven beyond a reasonable doubt, the element of intent to cause the death of a victim. A person acts intentionally with respect to the result or conduct described by a statute defining an offense when his conscious objective is to cause such result or engage in such conduct. Intent is a mental process. To discern what a person is thinking, the question of intent may be determined by considering all the facts and circumstances leading up to . . . surrounding and following the events in question. You may consider any statement made, an act done or admitted by the defendant, along with all the other facts and circumstances in evidence, and from those you may infer what his intention was.

"With respect to intent. There's no requirement that an intent to do a particular thing must be reached over a long period of time. It may be formed virtually instantaneously. However, to find intent, you must find that the defendant's mental state had, beyond a reasonable doubt, reached the level of conscious objective that I've just described here. Remember, it's in conjunction with this element of intent that you may consider the issue of intoxication. . . .

"If you find that the state has proven beyond a reasonable doubt that the defendant had the intent to cause the death of Christopher Love and that having that intention did cause the death of Christopher Love, the defendant did cause his death, then you will find the defendant guilty of murder and go no further."

irrelevant to a murder prosecution pursuant to § 53a-54a"; *State* v. *Prioleau*, 235 Conn. 274, 322, 664 A.2d 743 (1995); we conclude that the charge read as a whole did not mislead the jury.

The trial court commenced its charge on murder by reading the statutory definition of murder: "A person is guilty of murder when *with intent to cause the death of another person,* he causes the death of such person . . . ." (Emphasis added.) General Statutes § 53a-54a (a). The trial court then read the statutory definition a second time. In explaining the specific elements of murder, the trial court charged that the state had to prove, beyond a reasonable doubt: "Number one, that *the defendant intended to cause the death of another person,* in this case, Christopher Love. And number two, *that in accordance with that intent,* the defendant caused the death of Christopher Love." (Emphasis added.) The trial court then indicated that it was going to explain what those elements meant in a legal sense. In this regard, the trial court stated: "[T]he first element, which must be proven beyond a reasonable doubt, [is] *the element of intent to cause the death of a victim."* The trial court then instructed, pursuant to § 53a-3 (11), that "[a] person acts intentionally with respect to the result or conduct described by a statute defining an offense when his conscious objective is to cause such result or engage in such conduct." Several sentences later, the trial court charged: "If you find that the state has proven beyond a reasonable doubt that the defendant *had* the intent to cause the death of Christopher Love *and that having that intention did cause the death of Christopher Love* . . . then you will find the defendant guilty of murder and go no further."[12] (Emphasis added.)

---

[12] In response to a request from the jury, the trial court later reinstructed the jury regarding the elements of murder. The supplemental charge included the language that the defendant challenges on appeal.

In the present case, the trial court properly instructed the jury on several occasions that the state was required to prove that the defendant intended to cause the death of Christopher Love. "[I]t strains reason to believe that the jury could have [understood] the challenged instruction as not requiring that the state prove beyond a reasonable doubt that the defendant intended to kill [the victim]." (Internal quotation marks omitted.) *State* v. *Austin,* supra, 244 Conn. 237. The defendant, therefore, cannot prevail under the third prong of *Golding* because he has failed to establish that a constitutional violation clearly exists and that it clearly deprived him of a fair trial. Additionally, the defendant has failed to establish how the trial court's charge amounted to plain error. We, therefore, decline to review this claim further. See *State* v. *Austin,* supra, 244 Conn. 237; *State* v. *Prioleau,* supra, 235 Conn. 322; *State* v. *Boles,* 223 Conn. 535, 541–43, 613 A.2d 770 (1992); *State* v. *Jaynes,* 36 Conn. App. 417, 430–31, 650 A.2d 1261 (1994), cert. denied, 233 Conn. 908, 658 A.2d 980 (1995).

IV

The defendant's final claim is that the trial court placed undue emphasis on the defendant's interest in the outcome of the case and thereby "unduly singled out the defendant's testimony for unfair treatment."[13] The defendant claims that the charge impinged on his right to present a defense and his right to a fair trial under the fifth and fourteenth amendments to the

---

[13] The trial court charged as follows: "Now, the testimony of the defendant. Now, the accused in this case took the stand and testified. In weighing the testimony of an accused person you should apply the same principles by which the testimony of other witnesses is tested, and that necessarily involves the consideration of his interest in the outcome of the case. You may consider the importance to him [of] the outcome of the trial. An accused person having taken the witness stand stands before you, then, just like any other witness, and is entitled to the same consideration and must have his testimony measured in the same way as any other witness, including his interest in the verdict which you're about to render."

United States constitution, and article first, §§ 8 and 9, of the Connecticut constitution.[14] The defendant again concedes that he did not object to the charge at the time of trial. He, therefore, seeks review of this claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.

"We have treated the basic claim that specific mention of the defendant's interest infringes upon his right to a fair trial as falling within the claimed deprivation of a fundamental constitutional right . . . [and] [w]e must, therefore, examine the nuances of language, belatedly relied upon by the defendant, only for the purpose of determining whether they are significant enough to have affected the fairness of his trial." (Internal quotation marks omitted.) *State* v. *Williams*, 220 Conn. 385, 396–97, 599 A.2d 1053 (1991), quoting *State* v. *Mack*, 197 Conn. 629, 637, 500 A.2d 1303 (1985); *State* v. *Scarpiello*, 40 Conn. App. 189, 214, 670 A.2d 856, cert denied, 236 Conn. 921, 674 A.2d 1327 (1996).

The defendant's assertion that the trial court's reference to his interest in the outcome of the case "singled out the defendant's testimony for unfair treatment" is not supported by the record. The trial court specifically instructed the jury that "[i]n weighing the testimony of an accused person *you should apply the same principles by which the testimony of other witnesses is tested,* and that necessarily involves the consideration of his interest in the outcome of the case." (Emphasis added.) The trial court further charged that "[a]n accused person having taken the witness stand stands before you,

---

[14] The defendant additionally claims that the trial court's undue emphasis on the defendant's testimony effectively endorsed the state's comments during closing arguments that the defendant's story was simply "nonsense." The defendant's brief, however, does not contain a claim for prosecutorial misconduct based on improper remarks made by counsel during closing arguments. We will, therefore, consider this claim abandoned. See *State* v. *Rodriguez*, 44 Conn. App. 818, 823, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997) (appellate claims inadequately briefed deemed abandoned).

then, *just like any other witness, and is entitled to the same consideration and must have his testimony measured in the same way as any other witness,* including his interest in the verdict which you're about to render." (Emphasis added.)

Thus, "[t]he continual emphasis was that the jury was to evaluate the defendant's testimony in the same fashion as the testimony of the other witnesses. We have repeatedly approved the use of similar language and we do not find its use here unduly repetitive or transcending the bounds of evenhandedness." *State* v. *Williams,* supra, 220 Conn. 397; *State* v. *Scarpiello,* supra, 40 Conn. App. 215. The defendant, therefore, cannot prevail under the third prong of *State* v. *Golding,* supra, 213 Conn. 239–40.

The judgment is affirmed.

In this opinion the other judges concurred.