[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The original plaintiff, Merrill Lynch Equity Access, Inc. (MLEA or Merrill Lynch) commenced this action on January 7, 1986, to foreclose upon a note and mortgage issued to the defendants, Leon and Mary Cooper (the Coopers).[1] Also named as defendants are Citytrust and Fleet National Bank (Fleet). CT Page 1323-OO
On October 27, 1983, MLEA and the Coopers executed a credit agreement and note for an open-end credit account secured by a mortgage on the Coopers' residence.[2] In January 1985, Leon Cooper approached an entity known as Capital Impact Corporation (Capital), a subsidiary of Citytrust Bancorp, Inc. (the holding company of Citytrust) for a loan to be used by Elmsmere Company, an entity owned by Leon Cooper. In a letter dated January 28, 1985, Capital expressed its interest in negotiating a loan in the amount of $300,000.00. On February 1, 1985, Citytrust (as opposed to Capital) agreed to lend $150,000.00 to the Coopers. The Coopers accepted and granted a second mortgage to Citytrust to secure the loan.
On February 12, 1985, the Coopers defaulted on the MLEA credit agreement. On March 1, 1985, the Coopers defaulted on the Citytrust loan. As a result, on January 7, 1986, MLEA, the first mortgagee, commenced the present foreclosure action. Citytrust was named as a defendant because of its second mortgage on the Coopers' residence. Fleet was named as a defendant to the action by reason of its judgment lien on the Coopers' residence.[3] In response to MLEA's complaint, the Coopers filed an answer and a counterclaim in which they allege that they sustained damages because MLEA wrongfully refused to refinance the Coopers' note and mortgage prior to initiating the foreclosure proceeding. The Coopers also filed crossclaims against Citytrust and Fleet. The Coopers allege that Citytrust breached its loan commitment, thereby causing the Coopers to default on their credit agreement with MLEA. The Coopers assert a vexatious litigation crossclaim against Fleet in which they allege that Leon Cooper had a credit card agreement with Coolidge Bank Trust Co. of Cambridge, Massachusetts, and that Fleet sued "illegally" on the debt "belonging to Coolidge."[4] On July 25, 1986, a default was entered against Fleet for failure to plead in response to the Coopers' crossclaim.
On July 6, 1989, the Coopers paid the balance due to MLEA, and on July 27, 1989, MLEA withdrew its complaint against the Coopers. By order of the court dated August 9, 1991, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver for Citytrust, and was later substituted for Citytrust as a defendant in this action. In December 1991, the Coopers filed an amendment to their counterclaim against MLEA, in which they allege, inter alia, vexatious litigation claims against MLEA. On October 6, 1992, the Coopers filed an additional CT Page 1323-PP crossclaim against the FDIC in which they allege that the FDIC's sale of Citytrust's assets to Chase Manhattan Bank (Chase) was fraudulent because Chase did not pay fair value for Citytrust's assets. Thus, while the foreclosure aspect of the present case was resolved in July 1989, when the Coopers refinanced their residence and paid off the various encumbrances, the Coopers nevertheless continue to pursue their counterclaims against MLEA (and MLEA's successor in interest or parent company, Merrill Lynch Credit Corporation), as well as their crossclaims against Fleet and the FDIC as receiver for Citytrust.
Merrill Lynch has filed a motion for summary judgment supported by documentary evidence including the affidavit of Ray Chapman, a vice president of Merrill Lynch. The FDIC has filed a motion for summary judgment on the Coopers' crossclaims, also supported by documentary evidence. The Coopers have moved for summary judgment on their counterclaims against Merrill Lynch. That motion is supported by the affidavit of Leon Cooper. Merrill Lynch has filed a memorandum of law and documentary evidence in opposition to that motion.
 I.
"In this era of mounting congestion at every level of the . . . courts, procedural devices capable of terminating litigation quickly and efficiently, and fairly, acquire increased significance. One of the most important of these mechanisms is the motion for summary judgment . . . ." S.E.C. v.Research Automation Corp., 585 F.2d 31, 32 (2d Cir. 1978). In Connecticut, Practice Book § 384 provides that "[s]ummary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' . . .`In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such an issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court CT Page 1323-QQ [in support of a motion for summary judgment].' (Citations omitted; internal quotation marks omitted.) Water Way Properties v.Colt's Mfg. Co., 230 Conn. 660, 664-65, 646 A.2d 143 (1994). Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. See Practice Book § 381."Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185,202-03, 663 A.2d 1001 (1995).
"`In evaluating the propriety of a summary judgment, we are confined to an examination of the pleadings and affidavits of the parties to determine whether (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law.' (Internal quotation marks omitted.) Broadley v. Board of Education, 229 Conn. 1, 4 n. 7,639 A.2d 502 (1994)." Miller v. United Technologies Corp.,233 Conn. 732, 745, 660 A.2d 810 (1995). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way. Haesche v. Kissner, 229 Conn. 213, 216,640 A.2d 89 (1994). `The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact . . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party.' (Citations omitted; internal quotation marks omitted.) Batick v. Seymour, 186 Conn. 632,647-48, 443 A.2d 471 (1982). `[A] directed verdict may be rendered only where, on the evidence viewed in the light mostfavorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed.' (Emphasis added.) United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380, 260 A.2d 596
(1969). The facts as well as the evidence must be viewed in the light most favorable to the nonmoving party. Rawling v. NewHaven, 206 Conn. 100, 104, 537 A.2d 439 (1988). The burden of proof is on the moving party and the standards of summary judgment are strictly and forcefully applied. D.H.R.Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908
(1980)." Miller v. United Technologies Corp., supra, 233 Conn. 751-52.
 II.
CROSS MOTIONS FOR SUMMARY JUDGMENT FILED BY MERRILL LYNCH AND THE COOPERS
In support of its motion for summary judgment on the Coopers' counterclaims, Merrill Lynch contends that it had no CT Page 1323-RR contractual or equitable duty to restructure the Coopers' credit agreement after the Coopers defaulted. With respect to the Coopers' vexatious litigation claims, Merrill Lynch contends that the Coopers' amended counterclaims, filed in December 1991, are not properly before the court because the Coopers never sought leave of court to amend. Merrill Lynch further contends that if the court deems the amendment as proper, the Coopers' counterclaims for vexatious litigation must fail because Merrill Lynch had probable cause to initiate a foreclosure proceeding after the Coopers defaulted on the note.
In moving for summary judgment on their counterclaims, the Coopers argue that they are entitled to judgment as a matter of law because there was never a proper plaintiff in this action, as the first mortgagee and original plaintiff in this action, Merrill Lynch Equity Access, Inc. (MLEA), "ceased to exist in 1983," when it merged with Merrill Lynch Equity Management, Inc. (MLEM). Based on this reasoning, the Coopers contend that the institution and maintenance of this action by Merrill Lynch constitutes vexatious litigation. The Coopers further contend that Merrill Lynch (and its subsidiaries) never had authority to conduct banking business or other business activities in Connecticut.[5]
Additionally, the Coopers move for summary judgment on their counterclaims for "disparagement" and failure to accept the Coopers' tender offer.[6] While not moving for summary judgment on these claims, Merrill Lynch has addressed the merits of these claims in its memorandum of law in opposition to the Coopers' motion for summary judgment.
 A.
Because they raise the issue of the plaintiff's corporate capacity to sue, the court will first address the Coopers' claims that Merrill Lynch Equity Access, Inc. (MLEA) or Merrill Lynch Equity Management, Inc. (MLEM) were not proper party plaintiffs that could institute an action against them, and that MLEA and its successors in interest were not authorized to conduct business in Connecticut. Leon Cooper argues vociferously in support of their motion for summary judgment that "Merrill Lynch had no authority to bring this lawsuit being a non-existent entity ceasing existence due to merger . . . . [a]nd no surviving entity has ever been CT Page 1323-SS substituted herein." The Coopers further argue that Merrill Lynch never qualified pursuant to General Statutes § 33-412 to do business in Connecticut, and never qualified under § 36-5a to do banking business in Connecticut. The Coopers base their vexatious litigation claims on these arguments as well, as they contend that because of the statutory bars, there was no plaintiff, and therefore, no "probable cause" for bringing the foreclosure action.
In response, Merrill Lynch argues that the court should not address the Coopers' amended counterclaims because the Coopers never sought leave of court to amend their original counterclaim. With respect to the substantive issues raised by the Coopers, Merrill Lynch argues that the original plaintiff, MLEA, was merged into its other divisions, and that it was at all times authorized to do business in Connecticut.
The Coopers' initial counterclaim against Merrill Lynch contained only one claim, sounding in breach of an alleged duty to restructure the note and mortgage. In December 1991, the Coopers filed amended counterclaims which added four additional claims; two vexatious litigation claims, a "disparagement" claim and a claim for failure to accept the Coopers' tender offer. Merrill Lynch contends that the court should ignore the amended counterclaims on the ground that they were not properly filed in accordance with the rules of practice.
Practice Book § 176 provides that a party may amend his pleadings: "(a) By order of court; or (b) By written consent of the adverse party; or (c) By filing a request for leave to file such amendment . . . ." Section 176 further provides that "[i]f no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party."
The Coopers filed their amended counterclaims without leave of court, without written consent of the adverse party, and without filing a request for leave of court to amend their counterclaim. However, Merrill Lynch did not object to the amended counterclaim until it filed the pending motion for summary judgment. While the Coopers clearly did not follow the procedure set out in the Practice Book, Merrill Lynch should have timely objected to the amended counterclaims just as if CT Page 1323-TT it were objecting to a request for leave to amend. Because Merrill Lynch failed to timely object to the Coopers' amendments, the court will treat the Coopers' amended counterclaims as if they were filed with Merrill Lynch's consent, and accordingly, will address the merits of the counterclaims.
The Coopers initially raised the issue of Merrill Lynch's lack of corporate capacity to sue in a motion to dismiss for lack of subject matter jurisdiction, filed nearly ten years ago. In support of that motion, the Coopers argued that Merrill Lynch (that is, MLEA or MLEM) could not bring or maintain its foreclosure proceeding because it was not authorized pursuant to General Statutes §§ 33-396, 33-412 and 36-5a to do business in Connecticut.[7] In response, Merrill Lynch argued that MLEA was authorized to do business in Connecticut when it entered into the mortgage transaction with the Coopers, on October 27, 1983, and that the rights of the successor corporation, MLEM, to do business in Connecticut was "grandfathered" in pursuant to General Statutes §§ 36-5a(g) and 5a(c)(4). On January 13, 1987, this court (McGrath, J.)
denied the Coopers' motion to dismiss on the ground that an attack on the plaintiff's corporate capacity to sue must be raised by way of a special defense.
The rule is that a claim of lack of corporate capacity to sue for failure to comply with §§ 33-396 and 33-412 must be raised by way of special defense. Peters Production, Inc. v.Dawson, 182 Conn. 526, 529-30, 438 A.2d 747 (1980); UnitedStates Trust Co. of New York v. DiGhello, 179 Conn. 246, 249,425 A.2d 1287 (1987); Boxed Beef Distributors, Inc. v. Rexton,Inc., 7 Conn. App. 555, 558, 509 A.2d 1060 (1986). "Such a claim is but a voidable defect, waived if not raised by a defendant in a timely manner." United States Trust Co. of NewYork v. DiGhello, supra, 249.[8]
The Coopers have not raised the issue of lack of corporate capacity to sue as a special defense. Therefore, the issue is deemed waived. Moreover, even if the Coopers had properly raised the issue of lack of corporate capacity to sue and had proved that Merrill Lynch lacked such capacity, this lack of corporate capacity would not entitle the Coopers to collect damages, nor would it serve as a basis for a vexatious litigation claim. CT Page 1323-UU
To establish a claim for vexatious litigation, a plaintiff must prove "that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor. Vandersluis v. Weil, 176 Conn. 353, 356,407 A.2d 982 (1978); Calvo v. Bartolotta, 112 Conn. 396, 397,152 A. 311 (1930); Schaefer v. O.K. Tool Co., 110 Conn. 428,532, 148 A. 330 (1930)." Blake v. Levy, 191 Conn. 257, 263,464 A.2d 52 (1983); see also DeLaurentis v. New Haven,220 Conn. 225, 248, 597 A.2d 807 (1991). "Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action. Paranto v. Ball, 132 Conn. 568, 571,46 A.2d 6; McGann v. Allen, 105 Conn. 177, 186, 134 A. 810. Malice may be inferred from lack of probable cause. Zenik v.O'Brien, 137 Conn. 592, 596-97, 79 A.2d 769; Thompson v.Beacon Valley Rubber Co., 56 Conn. 493, 496, 16 A. 554. The want of probable cause, however, cannot be inferred from the fact that malice was proven. McGann v. Allen, supra, 187."Vandersluis v. Weil, supra, 176 Conn. 356.
Generally, as a matter of law, a mortgagee may commence a foreclosure action when it has knowledge of the mortgagor's default. Thus, because the Coopers were in default, Merrill Lynch had probable cause to commence the foreclosure action. Any lack of corporate capacity to sue on the part of Merrill Lynch due to a failure to comply with General Statutes §§ 33-396, 33-412 or 36-5a would not deprive Merrill Lynch of probable cause, nor would it indicate that Merrill Lynch was acting with malice in commencing the foreclosure proceeding. Rather, a lack of corporate capacity to sue for failure to comply with General Statutes §§ 33-396, 33-412 or 36-5a constitutes a voidable defect and a ground for asserting a special defense. If the Coopers had timely raised the special defense in response to Merrill Lynch's foreclosure claim, the special defense, if proven, would have been grounds for terminating Merrill Lynch's foreclosure action. However, Merrill Lynch's claim for a foreclosure was settled in July 1989. The issue of Merrill Lynch's lack of corporate capacity to sue, which might have been a valid defense to the relief of foreclosure, is now moot since the foreclosure aspect of the case has been withdrawn.
For these reasons, the court grants Merrill Lynch's motion for summary judgment as to the Coopers' vexatious litigation counterclaim, and denies the Coopers' motion as to CT Page 1323-VV this counterclaim.
 B.
In support of their motion for summary judgment, the Coopers allege that Merrill Lynch had a duty to restructure the note and mortgage which was the subject of Merrill Lynch's foreclosure action. In their motion for summary judgment (and in opposition to Merrill Lynch's motion for summary judgment), the Coopers contend that Merrill Lynch's duty to restructure the note and mortgage arises pursuant to General Statutes § 49-31d. The Coopers contend that they were entitled to protection from foreclosure because they were both underemployed from 1986 through 1989.
General Statutes §§ 49-31d through 49-31i, provide homeowners that meet certain qualifications with protection from foreclosure by means of a court-ordered restructuring of their mortgage debt. The relevant statute, § 49-31e, provides: "(a) In an action by a lender for the foreclosure of a mortgage of residential real property, such lender shall give notice to the homeowner of the availability of the provisions of sections 49-31d to 49-31i, inclusive, at the time the action is commenced." Section 49-31e further provides that: "(b) A homeowner who is given notice of the availability of the provisions of sections 49-31d to 49-31i, inclusive, must make application for protection from foreclosure within fifteen days of the return day." While the statutes in question place a duty upon a foreclosing mortgagee to notify the mortgagor of the availability of protection from foreclosure, they do not impose a duty on the mortgagee to restructure the note and mortgage. Nor do the statutes provide a mortgagee with an independent cause of action for damages for failure of a mortgagor to give the statutory notice.
However, it is apparent from a review of the original summons and complaint that at the time this action was commenced, Merrill Lynch (through MLEA or MLEM) in fact
notified the Coopers of the availability of protection from foreclosure provided by General Statutes §§ 49-31d through 49-31i. In order for the court to consider the note and mortgage for purposes of possibly restructuring them, the Coopers would have had to file a timely application for protection with the court.[9] The Coopers failed to file such an application. Thus, Merrill Lynch did not breach any duty imposed upon them by CT Page 1323-WW General Statutes §§ 49-31d through 49-31i.
Notably, any duty that arises pursuant to § 49-31d
through 49-31i applies only to the mortgagee's conduct in commencing a foreclosure proceeding. That is, under the relevant statutes, notice of the availability of protection from foreclosure must be given contemporaneously with the serving of a writ and summons. The Coopers' counterclaim is predicated upon allegations that Merrill Lynch wrongfully refused to refinance the note and mortgage prior to initiating the present foreclosure action. In moving for summary judgment on the Coopers' counterclaim, Merrill Lynch argues that it had no duty under the statutes or the terms of the note and mortgage to restructure the Coopers' debt prior to commencing a foreclosure action.
"The law does not recognize a `duty in the air'. . . . The existence of a duty is a question of law . . . ." (Citations omitted.) Shore v. Stonington, 187 Conn. 147, 151,444 A.2d 1379 (1982). There is nothing in the language of the note or mortgage which creates a duty to restructure or refinance the note and mortgage prior to commencing a foreclosure action. There are no statutory provisions which obligate a mortgagee to restructure the mortgage prior to commencing a foreclosure action. Therefore, the court grants Merrill Lynch's motion for summary judgment as to the Coopers' counterclaim for breach of the duty to restructure the note and mortgage, and denies the Coopers' motion for summary judgment with respect to that counterclaim.
 C.
In moving for summary judgment on their claim that Merrill Lynch wrongfully refused to accept their tender offer, the Coopers argue that they tendered payment in full to Merrill Lynch in June 1986, after Merrill Lunch commenced the foreclosure action, and Merrill Lynch refused to accept their offer. In response, Merrill Lynch argues that the Coopers never actually produced the monies that were due and owing, and that even if they did, Merrill Lynch's failure to accept the tender does not give rise to a valid counterclaim.
"Tender is an offer to perform a condition or obligation coupled with the present ability of immediate performance." 15 S. Williston, Contracts (3d Ed. 1972) § 1808. The term CT Page 1323-XX "tender" is defined as "an offer to pay a debt . . . [and] the offer to pay involves, as a general rule, the actual production of the money and the placing of it in the power of the person entitled to receive it." Mayron's Bank Shops, Inc.v. Arrow Stores, Inc., 149 Conn. 155, 156, 176 A.2d 574
(1961). To have valid tender, "[t]here must be: 1. An unconditional offer to perform, coupled with a manifested ability to carry out the offer; 2. A production of the subject matter of the tender; [and] 3. The amount tendered must not be less than what is due . . . ." 15 S. Williston, § 1810.
In his supporting affidavit, Leon Cooper states only that "on June 8-9, 1987, I arranged a refinancing of the loan with Merrill Lynch with First Connecticut SBIC with its CEO . . . ." Accepting Leon Cooper's uncontested statements as true, a request to refinance or an attempt to arrange refinancing does not constitute a valid tender to Merrill Lynch. Accordingly, the court denies the Coopers' motion for summary judgment on their "tender" counterclaim.
 D.
In support of their "disparagement" counterclaim, the Coopers argue that Merrill Lynch's filing of a lis pendens damaged their property by making the equity in their property unavailable from January 1986 until July 1989. In response, Merrill Lynch argues that it had a right to file a notice of lis pendens on the Coopers' property when it commenced the foreclosure proceeding, and that the Coopers never filed the appropriate motion to discharge the lis pendens.
The Coopers' "disparagement" claim appears to be a claim for slander of title. "Slander of title is a tort whereby the title of land is disparaged by a letter, caveat, mortgage, lien, or some other written instrument. Wright, Fitzgerald 
Ankerman, Connecticut Law of Torts, § 167 (3rd Ed. 1991). . . . Slander of title also requires allegations of false statements made with malice towards the title of the property.Harvey Realty Co. v. Wallingford, 111 Conn. 352, 361." Ganimv. Bridgeport Hydraulic Co., Superior Court, judicial district of Fairfield at Bridgeport, No. 282089 (1993) (Fuller, J.) (10 Conn. L. Rptr. 513, 514).
General Statutes § 52-325 provides in pertinent part that: "(a) In any action in a court of this state . . . (1) CT Page 1323-YY the plaintiff or his attorney, at the time the action is commenced or afterwards . . . if the action is intended to affect real property, may cause to be recorded in the office of the town clerk . . . a notice of lis pendens . . . ." "The notice of lis pendens puts `potential buyers of real estate and creditors of its owners on notice that the real estate may be subject to pending adverse interests that may affect the title or right to the property.' Garcia v. Brooks StreetAssociates, 209 Conn. 15, 22, 546 A.2d 275 (1988). It `is appropriate only where the pending action will in some way, either directly or indirectly, affect the title to or an interest in the real property itself.' Id." WallingfordStaffordshire Commons Assn., Inc. v. Staffordshire Associates,42 Conn. Sup. 241, 250, 615 A.2d 188 (1992).
Pursuant to General Statutes § 52-325, Merrill Lynch had the right to file a notice of lis pendens when it commenced the foreclosure action because such an action affects the title to the mortgaged property. Thus, the Coopers cannot prove that the lis pendens was false, malicious or otherwise improper. Any damages sustained by the Coopers because they could not use the equity in their property between June 1986 and July 1989 was caused by their default on the note and mortgage, and not by any actions taken by Merrill Lynch. The Coopers "disparagement" claim lacks merit because, inter alia, despite the existence of the lis pendens, in July 1989, the Coopers were able to obtain financing which enabled them to pay the monies owed to Merrill Lynch. Moreover, the Coopers have failed to present evidence as to whether they availed themselves of any of the procedures provided by General Statutes §§ 52-325a through 52-325d for discharging the lis pendens. Therefore, the Coopers' motion for summary judgment is denied as to their "disparagement" counterclaim.
 II. THE FDIC'S MOTION FOR SUMMARY JUDGMENT ON THE COOPERS' CROSSCLAIMS
As discussed supra, the Coopers filed a crossclaim against Citytrust based on allegations that Citytrust breached its loan commitment to the Coopers, thereby causing the Coopers to default on their credit agreement with Merrill Lynch. The Coopers subsequently filed a crossclaim against the FDIC sounding in fraud. The FDIC, as receiver for Citytrust, moves for summary judgment on the Coopers' CT Page 1323-ZZ crossclaim based on the alleged Citytrust loan commitment on the following grounds: (1) the crossclaim is barred by theD'Oench Duhme doctrine; (2) there was no enforceable contract between Citytrust and the Coopers to lend funds over and above the $150,000.00 that was initially loaned to the Coopers; and (3) there was no legally binding commitment to loan $300,000.00 to the Coopers. The FDIC also moves for summary judgment on the Coopers' fraud crossclaim on the ground that the Coopers fail to plead and prove the essential elements of a fraud cause of action.
In response, the Coopers argue that the "loan commitment" document drawn up by Capital Impact constituted an enforceable agreement to lend the Coopers $300,000.00, and that Citytrust subsequently breached this agreement. The Coopers further contend that after Citytrust loaned them $150,000.00, its agents made representations that the bank intended to loan them an additional $150,000.00, and that Citytrust's failure to do so caused the Coopers to sustain damages.
 A.
Having examined the documentary evidence submitted by the FDIC, the court concludes that the letter of intent drafted by Capital Impact (a subsidiary of Citytrust) does not constitute an agreement to loan any amount of money to the Coopers. While the letter evidences that Capital Impact and Leon Cooper discussed a loan in the amount of $300,000.00, the letter plainly states that "[t]his letter of intent is not a bindingcommitment on the part of Capital for any purpose, but only anexpression of interest to conduct an investigation into theaffairs of Elmsmere with a view of issuing a bindingcommitment . . . ." (Emphasis added.) The letter of intent does not even mention Citytrust, nor does it indicate that any statements made by Capital Impact would be binding upon Citytrust.
In attempting to argue that this letter of intent constitutes a "loan commitment" or some type of enforceable agreement to loan a specific amount of money, the Coopers offer as "proof" the statements contained in Leon Cooper's affidavit. At most, these statements constitute Leon Cooper's subjective beliefs with respect to the letter of intent. However, Leon Cooper's subjective beliefs cannot contradict the plain and unambiguous meaning of the language used in the CT Page 1323-AAA letter of intent and create a contract where none exists.Griffin v. Nationwide Moving Storage Co., 187 Conn. 405,414, 446 A.d 799 (1982);Lemonious v. Burns, 27 Conn. App. 734, 740, 609 A.2d 254
(1992). "Under these circumstances [a motion for summary judgment] serves the salutary purpose of permitting us to recognize the reality that a contract never existed." S.E.C.v. Research Automation Corp., supra, 585 F.2d 34. There are no genuine issues of material fact. The court concludes that the letter of intent does not constitute an enforceable agreement to loan money to the Coopers.
The Coopers argue that Citytrust breached its agreement to loan them $300,000.00. The Coopers argue that the fact that Citytrust loaned them $150,000.00 is proof that the Citytrust board of directors or loan committee approved a loan to the Coopers in the amount of $300,000.00. The Coopers allege in their crossclaim that there was "a written commitment to lend [the Coopers] an additional $150,000.00 . . . ."
The FDIC argues that assuming either written or oral agreements to lend additional funds were made between the Coopers and agents of Citytrust, these unrecorded statements are barred by the D'Oench Duhme doctrine and therefore, cannot support a crossclaim for breach of an agreement to lend money against the FDIC.
In D'Oench, Duhme Co. v. Federal Deposit Ins. Corp.,315 U.S. 447 (1942), the Supreme Court concluded that there was a `federal policy to protect . . . [the FDIC] and the public funds which it administers, against misrepresentations as to the assets in the portfolios of the banks which . . . [the FDIC] insures or to which it makes loans." Id.,315 U.S. at 457. "In order to effect this federal policy, the Court fashioned a common law rule of estoppel precluding a borrower from asserting against the FDIC defenses based upon secret or unrecorded `side agreements' that altered the terms of facially unqualified obligations." Bell Murphy Assoc. v.Interfirst Bank Gateway, 894 F.2d 750, 753 (5th Cir. 1990).
Congress subsequently codified the D'Oench Duhme doctrine at 12 U.S.C. § 1823 (e). Bateman v. FDIC, 970 F.2d 924, 926
(1st Cir. 1992). "Courts often consider the D'Oench Duhme
doctrine and § 1823(e) in tandem, looking to the common law when construing the statute." Beighley v. FDIC, 868 F.2d 776, CT Page 1323-BBB 784 (5th Cir. 1989). Section 1823(e) provides that:
 No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement:
(1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder . . . contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee . . ., and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
12 U.S.C. § 1823 (e). Agreements that do not comply with these four requirements are unenforceable against the FDIC. Langley v.Federal Deposit Ins. Corp., 484 U.S. 86 (1987); FDIC v.Caledonia Inv. Corp., 862 F.2d 378, 383 (1st Cir. 1988). Thus, special defenses and counterclaims asserted against the FDIC, when based on unrecorded "side agreements," are barred by both § 1823(e) and the D'Oench Duhme doctrine. See, e.g., FDIC v.Kasal, 913 F.2d 487, 493 (8th Cir. 1990); Astrup v. MidwestFederal Savings Bank, 886 F.2d 1057, 1059 (8th Cir. 1989);Beighley v. FDIC, supra, 868 F.2d 784.
The parties acknowledge that Citytrust loaned $150,000.00 to the Coopers. While may be inferred from the making of the loan that officers of Citytrust approved of a loan in that amount, the letter of intent issued by Capital Impact, without more, cannot establish that Citytrust ever committed to loan additional monies to the Coopers.
In support of its motion, the FDIC submits a copy of a "notice of disallowance of claim" sent by the FDIC to the CT Page 1323-CCC Coopers. The notice states in pertinent part: "The `agreement' to which you referred, is a letter of intent . . . on the letterhead of the subsidiary, Capital Impact, not by the receivership bank, Citytrust. Although it is suggested that the obligations of the subsidiary were assumed by Citytrust in 1986,there is no evidence of this in the file of the bank . . . ."
(Emphasis added.)
The Coopers have not produced evidence to support their allegation that there exists a written agreement executed by Citytrust to lend them an additional $150,000.00. Even if the Coopers were able to produce such a written agreement, they would have to produce evidence that would dispute the FDIC's claim; that is, they would have to produce evidence that the agreement was executed by Citytrust, and that it was approved by the directors of Citytrust, and that it is part of Citytrust's official records). In the absence of an agreement which meets the requirements of 12 U.S.C. § 1823 (e), the Coopers' crossclaim for the breach of an agreement by Citytrust to lend additional monies to the Coopers, brought against the FDIC as receiver for Citytrust, must fail as a matter of law, as such a crossclaim is barred by the D'Oench Duhme doctrine and 12 U.S.C. § 1823 (e).
 B.
In support of its motion for summary judgment on the Coopers' fraud crossclaim, the FDIC argues that the Coopers failed to plead and prove the elements of a legally sufficient fraud cause of action.
"`"[T]he essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury.Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 515,271 A.2d 69 (1970); Clark v. Haggard, 141 Conn. 668 [673],109 A.2d 358 (1954); Helming v. Kashak, 122 Conn. 641, 642,191 A. 525 (1937); Bradley v. Oviatt, 86 Conn. 63, 67, 84 A. 321
(1912); Barnes v. Starr, 64 Conn. 136, 150, 28 A. 980
(1894).". . . .' Maturo v. Gerard, 196 Conn. 584, 587,494 A.2d 1199 (1985); D. Wright J. Fitzgerald, Connecticut Law of Torts (2d Ed.) § 135." Kilduff v. Adams, Inc., 219 Conn. 314,329, 593 A.2d 478 (1991). The Coopers have failed to allege any of these elements in support of their crossclaim. CT Page 1323-DDD
A motion for summary judgment may be used to test the legal sufficiency of a pleading after an answer has been filed and "if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409, 279 A.2d 540
(1971). However, a party cannot employ a motion for summary judgment in lieu of a motion to strike to take judgment based on pleading deficiencies which the opposing party could have remedied as of right had a motion to strike been timely filed. See Practice Book § 157.[10] The FDIC has failed to assume its burden of showing that there are no genuine issues of material fact as to this crossclaim.
 III
In conclusion, the court grants Merrill Lynch's motion for summary judgment (#331) in its entirety, and accordingly renders judgment in favor of Merrill Lynch on the Coopers' counterclaims for breach of a duty to restructure the note and mortgage (the original counterclaim) and vexatious litigation (counterclaims filed in December 1991, titled "vexatious suit A" and "vexatious suit B"). The court denies the Coopers' motion for summary judgment (#339) in its entirety (i.e., as to the three counterclaims upon which judgment has been rendered in favor of Merrill Lynch, and as to the remaining counterclaims for "tender" and "disparagement"). The parties shall file additional dispositive motions addressing the substantive issues raised in the Coopers' tender and disparagement counterclaims by March 20, 1996.
The court grants the FDIC's motion for summary judgment (#335) in part and denies it as to that cross claim of the Coopers which alleges fraud. The parties shall file additional dispositive motions addressing that cross claim by March 20, 1996.
BY THE COURT Bruce L. Levin Judge of the Superior Court